CITY OF ELECTRA v. CARNATION CO. OF TEXAS.

No. 14889.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 5, 1947.

Rehearing Denied Jan. 9, 1948.

John E. McKelvey, of Electra, for appellant.

Arch Dawson, of Wichita Falls, for appellee.

McDONALD, Chief Justice.

On March 24, 1947, the City of Electra, a home rule city, enacted an ordinance designed to regulate the grading, labeling and sale of milk in that city. Section 3 of the ordinance reads as follows: "Section 3. No pasteurized milk or cream shall be sold in the City of Electra, Texas that has not been pasteurized in the City of Electra, except as may be authorized by the City Health Officer. That the City Health Officer shall make inspections of said pasteurization apparatus in accordance with the rules and regulations of the State Health Officer, and shall grade the milk and milk products, and shall see that the same are labeled in accordance with the Section above enumerated. Provided, that the City Health Officer may approve the sale of milk and milk products brought into the City of Electra from distant points from dairies, producers, and milk plants that have not been inspected by said City Health Officer, and the City Health Officer may issue a permit for the sale of said milk and milk products in the City of Electra, if said milk and milk products have been produced and processed under regulations equivalent to this ordinance, and if said milk or milk products have been awarded by the State Control Agency a rating of Ninety (90%) per cent or more on the basis of the Public Health Service Rating Method."

Appellee, the Carnation Company of Texas, operated a creamery in Wichita Falls, and was selling an average of 200 gallons of milk a day to merchants, restaurants and others in Electra at the time of the passage of said ordinance.

The City of Electra, through its officers, relying on the quoted section of said ordinance, refused to allow appellee to sell milk in Electra, and refused to issue it a permit to sell milk, except on condition that it furnish evidence that its milk and milk products had been awarded a rating of ninety per cent or more by the officers of the State Department of Health of the State of Texas.

The case was tried without a jury. The judgment rendered by the trial court declares that the provisions of Section 3 of the ordinance wherein it is required that milk brought in from a distant source have a rating of ninety percent or better are so indefinite as to render said section void. The decree of the judgment is as follows: "It Is Therefore, on this the 28th day of May, 1947, ordered, adjudged and decreed that the defendant, the City of Electra, its agents, officers, employees, and servants, be enjoined and restrained perpetually from enforcing or attempting to enforce said void provisions of said ordinance referred to, and from molesting or interfering with the plaintiff, the Carnation Company of Texas, in the conduct of its business in the selling of its milk and milk products in the City of Electra, it being the intent and effect of this decree that the plaintiff is entitled to a permit to sell its said products in the City of Electra, and that it have the legal status of a lawful permittee to all intents and purposes as if a permit to sell its said products had been regularly obtained from the City Health Officer of the City of Electra. Nothing herein, however, will be construed to prevent the defendant, the City of Electra, and its Health Officer from hereafter enforcing any of the valid provision of said ordinance, or to give the plaintiff any special benefit or immunity hereunder which it would not have under a regular permit duly issued to it by the City Health Officer of the City of Electra, it being intended that the permit herein decreed in favor of the plaintiff will at all times hereafter be subject to any and all valid regulations and other lawful control of the Health Officer of the City of Electra under the valid provisions of said ordinance."

■ From the pleadings and the evidence, and from the briefs filed in this court, it is clear that the only controversy between the parties is that relating to the requirement made by appellant that appellee must furnish satisfactory proof that its milk had been awarded a rating of ninety percent or better. Appellee had for many years held a permit from the health authorities of the City of Wichita Falls to sell Grade A pasteurized milk, and it appears from the record before us that the Electra authorities did not question the fact that appellee's milk was entitled to be labeled as Grade A.

Article 165—3, Vernon's Annotated Civil Statutes, relates to the pasteurization, handling and sale of milk. Under that statute, milk may be graded as A, B, C, or D, and as raw or pasteurized. Reference is made in the statute to the United States Public Health Service Milk Ordinance. In that ordinance provision is made for grading milk in the same manner. There is no provision under said statute, nor under the ordinance last mentioned, for grading or rating milk according to a percentage, as for instance, ninety percent or better. From the evidence before us, it would seem that the authors of the Electra ordinance confused the manner of grading milk with a method of rating milk sheds which is suggested in a bulletin issued by the United States Public Health Service. Such bulletin sets out in some detail a method by which public health authorities may make tests designed to show the conditions prevailing in a given milk producing area, both as to dairies and as to milk processing plants. The suggested rating of a milk shed is not designed nor intended to determine the grade or quality of the milk of a given producer or processor in such area, but only to show the average conditions prevailing in the entire area.

The effect of the provisions referred to in Section 3 of the Electra ordinance was to permit its health officer to impose arbitrary and unreasonable conditions upon one seeking to sell milk in that city. In the case on appeal, the health officer testified that the permit was refused only because appellee did not produce evidence that its milk graded ninety percent or better. The ordinance set up a standard that was nonexistent, and which could not, as a practical matter, be complied with. There is not, under the state statute and the rules and regulations shown by the record before us, any such thing as an award of ninety percent or better to milk and milk products by the State Control Agency on the basis of the Public Health Service Rating Method.

We have carefully considered two decisions construing Article 165—3, but neither of them involved quite the same problem which we have before us. Prescott v. City of Borger, Tex.Civ.App., 158 S.W.2d 578; Leach v. Coleman, Tex.Civ.App., 188 S.W.2d 220.

■ Some other questions are raised in appellant's brief which we shall discuss.

Under the fifth point it is contended that appellee could not attack the validity of the ordinance until it had been applied against it. The facts are against appellant on this contention.

Under the sixth point it is contended that appellee had not, before bringing suit, exhausted the remedies allowed by the ordinance, to-wit, an appeal to the city council from the refusal of the health officer to issue a permit. The contention is not applicable under the facts of this case. It may have been that no formal appeal was taken to the city council from the action of the health officer, but the evidence shows that appellee took up with the council the matter of selling its milk in Electra, and that the council held some special meetings devoted entirely to that one matter, and without doubt denied appellee permission to sell its milk in Electra. The health officer declared to appellee's representatives that the matter had been passed to the council, and was out of his hands. Nothing more could have been accomplished by a formal appeal to the council.

■ Under the seventh point appellant claims that the city was authorized under the state statute only to regulate sales of milk at retail, and that therefore the ordinance did not apply to appellee, and that, consequently, appellee was not entitled to maintain the suit. We do not believe that the ordinance, nor the state statute, is subject to such construction.

■ Under the eighth point it is argued that appellee had an adequate remedy at law by way of mandamus to compel the health officer to issue the permit. Mandamus is not a legal, as distinguished from an equitable, remedy. In the argument under the point it is contended that an injunction would issue only to protect a property right. The decision in Prescott v. City of Borger, supra, seems to be sufficient authority to support the right of appellee to attack the validity of the ordinance by injunction under the facts and circumstances of the case.

Still other questions are discussed in the briefs, but what we have said is sufficient to warrant affirmance of the judgment of the trial court.

Judgment affirmed.