**CITY OF EL PASO et al. v. RUSSELL GLENN DISTRIBUTING CO., Inc.**

No. 4754.

Court of Civil Appeals of Texas. El Paso.

Oct. 11, 1950.

Rehearing Denied Nov. 22, 1950.

Ernest Guinn, El Paso, for appellants.

Frank H. Hunter, El Paso, for appellee.

McGILL, Justice.

This is an appeal from a permanent injunction, mandatory in its nature, by which the 41st Judicial District Court of El Paso County ordered appellant Dr. L. T. Cox to issue to appellee Russell Glenn Distributing Company, Inc., a permit to distribute in the city and county of El Paso, Texas, "Grade 'A' pasteurized milk and milk products of the Tennessee Dairies, Inc., Dallas, Texas", and ordered the City of El Paso to issue to appellee Russell Glenn Distributing Company, Inc., a similar permit to distribute such pasteurized milk and milk products in the city of El Paso, Texas. The judgment also held void two resolutions passed by the El Paso City-County Board of Health on February 3, 1950, relating to the dating of milk cartons and to an equivalent mastitis program for milk brought into the City and County of El Paso, Texas, and perpetually enjoined appellants from enforcing said resolutions.

For approximately three years prior to the filing of this suit appellee Russell Glenn Distributing Company, Inc., had been engaged in the business of purchasing milk from the Tennessee Dairies in Dallas, Tex-

as, and distributing such milk in the West Texas area. The milk which came to El Paso was produced from dairy herds in the Dallas milk shed and processed and pasteurized by the Tennessee Dairies in Dallas. It was enclosed in paper cartons and transported by appellee in a semi-trailer, which was insulated and had a mechanical refrigeration unit, either to Odessa or Pecos, where it was transferred to an insulated truck and iced down and brought to El Paso County. Sometimes the milk was stored in a vault at Pecos for four hours or more and then reloaded and brought to El Paso. Sometimes the transfer from the trucks was along the road where the trucks met; milk that was not sold en route to El Paso was stored in a vault and sometimes sold in the county the next day. Dr. L. T. Cox is director of the City-County Health Unit of El Paso and as such is charged with performance of all the duties of a City Health Officer and a County Health Officer. On June 5, 1941, the City Council of the City of El Paso passed and approved a comprehensive standard milk ordinance to regulate the sale of milk within the city limits. Much of the controversy in this case revolves around Section 11 of this ordinance, which is as follows: "Section 11. Milk and Milk Produced From Points Beyond the Limits of Routine Inspection. Milk and milk products from points beyond the limits of routine inspection of the City of El Paso, Texas must not be sold in the City of El Paso, Texas, or its police jurisdiction, unless produced and/or pasteurized under provisions equivalent to the requirements of this ordinance: Provided, That the health officer of the City of El Paso, Texas or the Director of the City-County Health Unit of El Paso, Texas shall satisfy himself that the health officer having jurisdiction over the production and processing is properly enforcing such provisions."

It is conceded that the City of Dallas Milk Ordinance is substantially the same as the El Paso ordinance. Appellee began to sell Tennessee Dairies milk in El Paso County during the latter part of November, 1949 without procuring a permit to do so from Dr. Cox. On December 7, 1949, it did apply to Dr. Cox for such permit to sell such milk, both in the city and the county. No action was taken by Dr. Cox on this application and this suit was filed on January 14, 1950. Appellee as plaintiff sought a temporary mandatory injunction requiring the issuance of such permits. On hearing on February 3, 1950, a temporary injunction was denied on the ground that the ultimate relief sought should not be granted by a temporary injunction. The application for a permanent injunction was heard on March 6, 1950, with the result indicated.

Appellants attack the judgment and orders of the court by eight points of error. These are briefly summarized: (1) Appellee having violated the laws of this State relating to the distribution of milk and milk products by selling milk in El Paso County without having applied for or obtained a permit, is not entitled to a permit to sell milk in El Paso and El Paso County; (2) appellee having sold milk products in El Paso County without complying with the labeling and grading laws relating to milk is not entitled to such permit; (3) appellee having failed to comply with the laws of this state relating to the production, handling and sale of milk and milk products at the time of filing suit and at the time of trial, is not entitled to receive and retain such permit; (4) the undisputed evidence showing that milk offered by appellee for sale came from mastitic cows, appellee is not entitled to a permit; (5) the undisputed evidence showing that appellee was handling milk and milk products in violation of the health laws of this state, appellee is not entitled to a permit; (6) the undisputed evidence showing that appellee sold unapproved labeled cartons of milk and was selling them at the time suit was filed, and at the time of the trial it is not entitled to a permit; (7) the undisputed evidence showing that at the time of the filing of the suit and at the time of the trial appellee was handling milk and milk products in violation of Art. 707 of the Texas Food and Drug Law, Vernon's Ann. P.C. art. 707, it is not entitled to a permit, and (8) the undisputed evidence showing that appellee violated the food and drug laws relating to sanitation in the handling

of milk at the time of the trial, it is not entitled to a permit.

This case was tried before the court without a jury. The evidence introduced on the hearing of the application for a temporary injunction was introduced on the final hearing and is incorporated in the Statement of Facts, which is voluminous, consisting of 614 type-written pages. The court filed elaborate Findings of Fact and Conclusions of Law, which we think it necessary to set out in full, since many of appellants' points are answered by these findings.

"Findings of Fact and Conclusions of Law.

"In response to the request of defendants in the above entitled and numbered cause, I find, make and file the following as my Findings of Fact and Conclusions of Law therein:

"Findings of Fact.

"1. Plaintiff is duly incorporated and is the distributor in West Texas of milk and milk products produced and processed by Tennessee Dairies, Inc., Dallas, Texas.

"2. Defendant City of El Paso is a Home rule city of Texas and the defendant, Dr. L. T. Cox, is the Director of the El Paso City-County Health Unit and as such Director the defendant, Dr. L. T. Cox, performs the functions and duties of Health Officer of the City of El Paso and of the County of El Paso as well.

"3. That on December 7, 1949, plaintiff applied for a permit to distribute Grade 'A' milk and milk products of the Tennessee Dairies, Inc. in the City and County of El Paso, Texas. That on February 15, 1950, plaintiff applied for a permit to use and advertise labels of the Tennessee Dairies, Inc. on the milk and milk products of the Tennessee Dairies, Inc. distributed by plaintiff; that said applications considered together constitute a sufficient and proper application.

"4. That the Grade 'A' milk and milk products of the Tennessee Dairies, Inc. have been, and are, produced and pasteurized in accordance with the specifications and requirements of the State Health Officer. The Grade 'A' label has been de-

termined and awarded to the Tennessee Dairies, Inc. by the City Health Officer of the City of Dallas, Texas. Tennessee Dairies, Inc. sells the Grade 'A' milk and milk products herein involved to the plaintiff in the City of Dallas, Texas, and Plaintiff distributes said milk in West Texas.

"5. That the Ordinance of the City of El Paso relating to milk and milk products is the equivalent of the Ordinance of the City of Dallas relating to the same subject matter, and both Ordinances conform to the State Law, Art. 165-3 Revised Civil Statutes of Texas, and the Regulations and Specifications promulgated by the State Health Officer pursuant to said State Law.

"6. That the proposed plan of the plaintiff to load milk and milk products of the Tennessee Dairies, Inc. at their plant in Dallas, and transport the same to El Paso County, Texas, and to make deliveries in the City and County of El Paso in a refrigerated truck is in full compliance with the laws and regulations of the State of Texas, and the milk ordinances of the City of El Paso, Texas.

"7. That the milk and milk products distributed by plaintiff are of Grade 'A' quality.

"8. That the milk and milk products of Tennessee Dairies, Inc. distributed by plaintiff are in paper, disposable cartons, and that said cartons or paper containers are an accepted, proper and legal method of packaging and distributing milk and milk products.

"9. That the labels of the milk distributed by plaintiff are proper within Art. 165-3 Revised Civil Statutes of Texas and the Ordinances of the City of El Paso and the City of Dallas, Texas. That the fact that said labels contain advertising of the product known as 'Half and Half' is not misleading nor is it misbranding within the meaning of the State Law and City Ordinance.

"10. That the Health Officer of the City of Dallas is properly enforcing the Ordinance relating to milk of that City.

"11. That the enforcement rating of the State Health Department for the City of Dallas is higher than the enforcement rating for the City of El Paso.

"12. That the defendant, Dr. L. T. Cox, failed to act upon plaintiff's application for a permit within a reasonable time.

"13. That the failure to act and failure to grant *the part* of Dr. L. T. Cox was arbitrary and an abuse of discretion.

"14. That the actions and the conduct of the defendant, Cox, in failing to grant said permits requested by the plaintiff and his actions generally as regards this plaintiff and the products distributed by plaintiff are and were an unjust discrimination against plaintiff. That defendant, Dr. L. T. Cox, was influenced in part in refusing plaintiff's permit by a desire to protect the milk shed of the City and County of El Paso, Texas.

"Conclusions of Law.

"1. Plaintiff has no adequate remedy at law.

"2. The resolutions or regulations passed by the El Paso County Board of Health on February 3, 1950, relating to an equivalent mastitis program and to the dating of milk cartons are void as being beyond the powers of said Board as defined in Art. 4436–a, Subsection 2 of the Revised Civil Statutes of Texas [Vernon's Ann.Civ.St. art. 4436a–1, § 2] on the authority of Prescott v. The City of Borger [Tex.Civ. App.,] 158 S.W.2d 578; and the same are void as being an illegal and unjust discrimination on the authority of the City of Greenville v. Pratt [Tex.Civ.App.,] 214 S.W.2d 179.

"3. That plaintiff is entitled to a mandatory injunction requiring defendant, Cox, to issue the permits requested and to an injunction restraining the defendants from interfering with the plaintiff in the lawful and proper conduct of Plaintiff's business under said permits on the authority of City of Greenville v. Cabell's [, Inc., Tex. Civ.App.,] 207 S.W.2d 898.

"Signed this the 17th day of April, 1950.

"(Sgd) David E. Mulcahy,

"Judge, Forty First District Court."

"Additional Findings of Fact and Conclusions of Law.

"In response to the request of defendants in the above entitled and numbered cause, I find, make and file the following additional Findings of Fact and Conclusions of Law therein:

"Findings of Fact.

"1. The plaintiff commenced to sell and distribute milk in El Paso County, in November, 1949, without a permit and without an application having been filed for a permit, but the plaintiff was told by the Chief Sanitarian, Mr. Harold Tillman, that a permit was not required for the County but would be required for the City.

"2. The application filed December 7, 1949, for a permit to distribute milk in the City and County of El Paso was sufficient to notify the defendant Cox of plaintiff's intentions, and that the defendant Cox took no steps to investigate or act upon said application within a reasonable time and defendant Cox did not fail or refuse to act on said application because of its informality or insufficiency. Defendant Cox could have required a more specific application had he so desired. The application, though informal, is deemed sufficient, where accepted without objection on such ground.

"3. That the plaintiff continued to sell milk in El Paso County after being advised by the defendant Cox to stop selling milk in paper containers in El Paso County, but the advice received from Dr. Cox was subsequent to being advised by Mr. Tillman that no permit was required in the County.

"4. The milk distributed by the plaintiff from November, 1949, up to the time of judgment was never graded by the defendant Cox as Grade 'A' milk, but the milk had been graded as Grade 'A' milk by Dallas Health Officer and a Grade 'A' permit had been issued to the Tennessee Dairies, Inc., Dallas, Texas. Such Grade 'A' permit had been approved by the State Health Officer.

"5. The plaintiff, prior to February 15, 1950, had filed no application to use and advertise Grade 'A' labels in the City and County of El Paso, but the defendant Cox had, prior to that time, obtained samples of plaintiff's product and had seen the labels thereon.

"6. The State Health Department and State Health Inspectors approved plain-

tiff's trucks and storage vaults at Pecos and at El Paso, and the same are in full compliance with the milk grade and labeling law, Art. 165–3 R.C.S. and the Specifications and Regulations issued thereunder.

"7. From the time the plaintiff started selling milk in El Paso County up to and including the time of trial and date of judgment, the plaintiff used, and was using, Pecos storage plant as a place of storing milk destined for El Paso. .

"8. That the plaintiff from November, 1949, until the first week in February, 1950, had on its trucks the word 'Tennessee Dairies, Dallas, Texas,' and from the first part of February, 1950, down to date of judgment the plaintiff had on said trucks the above and, in addition thereto, 'Russell Glenn Distributing Company, Odessa, Texas.'

"9. The plaintiff did comply with the Health Laws of this State relating to the handling and storage of milk, both in Pecos and at El Paso. .

"10. The plaintiff stored and handled milk in the City of El Paso and did not violate thereby the State or City Health Regulations, and did not distribute or sell said milk within the City of El Paso.

"11. Plaintiff's employees did not refuse inspection of the delivery trucks.

"12. From the time the plaintiff started selling milk in El Paso County up to and including the time of trial and date of judgment, the plaintiff used and was using a storage vault at Pecos for storing of milk destined for El Paso, but that said milk was stored at Pecos not longer than three or four hours.

"13. Coliform bacteria was found in samples of plaintiff's milk, but coliform is a bacteria, and was found after the milk cartons had been shaken vigorously 25 times by the laboratory man, and no particular quantity of coliform bacteria was found. .

"14. There was also found in the plaintiff's milk paraffin, which was found after the cartons had been shaken vigorously 25 times by the laboratory man.

"15. The paper containers are not subject to contamination and are an accepted method of packaging and distributing milk and milk products.

"16. The paper containers do not suck into the milk or carton impurities upon changes of temperature alone.

"17. The paper containers are safe and proper distribution methods for long distances.

"18. The Court, in permitting the plaintiff to sell milk in El Paso County after the hearing on the temporary injunction, continued such restraining order in effect in order to maintain the status quo pending final judgment.

"19. The plaintiff was not entitled to the issuance of a permit by temporary mandatory injunction, for the reason that full relief would have been granted on a temporary injunction.

"20. Plaintiff was not selling adulterated or misbranded milk in El Paso County from November, 1949, up to the time of final judgment.

"21. C. A. Sturges, Agent of the plaintiff, was selling and handling milk in El Paso County with a health card issued by the El Paso City-County Health Unit.

"22. That during the time between November, 1949, and the time of judgment, plaintiff was distributing milk in El Paso County from Tennessee Dairies, Inc. which milk came from healthy cows that did not have mastitis.

"23. The method of cleaning the plaintiff's equipment and storage places in El Paso County and at Pecos is proper.

"24. The milk distributed by the plaintiff from November, 1949, to the date of judgment has not been subject to filth or contamination from the ice or deterioration or leakage of the carton.

"25. I find that it is practical and possible for the City-County Health Officers to determine the date milk is pasteurized and that it is practical and possible for the El Paso City-County Health Unit to properly examine and test pasteurized milk processed beyond the jurisdiction of said Unit.'"

"27. I find that the El Paso City-County Health Board passed resolutions on February 3, 1950, relating to mastitis and dating of pasteurized milk, upon the motion of the defendant, Dr. L. T. Cox, and at a special meeting called for that purpose by the defendant, Dr. L. T. Cox.

"28. I find that the plaintiff tendered the sum of Twenty Dollars ($20.00) into Court to cover license fees as required by the ordinance of the City of El Paso and that said sum is adequate for that purpose, but that plaintiff did not tender such fees to the license collector of the City of El Paso, Texas.

"29. I find that the defendant Cox refused to award a Grade 'A' permit and Grade 'A' label of the milk distributed by plaintiff, that such action was arbitrary and an abuse of discretion. The defendant, Dr. L. T. Cox, has not satisfied himself that the Health Officer of the City of Dallas is properly enforcing the milk ordinance of the City of Dallas, the equivalent of the City of El Paso, relating to milk and milk products. Under the facts established by the overwhelming weight of evidence, he should be so satisfied. His failure to be satisfied is due to a predetermination not to be.

"30. I find that the Pecos storage plant was in all respects in compliance with the State Law and the Regulations and Specifications of the State Health Department relating to milk and milk products.

"Conclusions of Law.

"1. The Grade 'A' label must be awarded at the points of production and processing and that said milk remain Grade 'A' unless and until it falls below the standards as set by the Specifications and Regulations of the State Health Department and Art. 165-3 R.C.S.1925 as amended.

"2. The defendant Cox has the power within El Paso County only to require such examinations for mastitis as he may deem advisable, so long as the requirements of the State Law are met.

"3. The City-County Board of Health of El Paso has the right to require in El Paso County only such physical and laboratory tests for determining mastitis as they may deem advisable so long as the minimum requirements of the State Law and Regulations are met.

"4. Only a person who complies with the Specifications and Requirements of the State Health Department issued pursuant to Art. 165-3 R.C.S. shall be entitled to receive and retain a permit to distribute Grade 'A' milk as required by Section 3 of the Specifications and Requirements of the State Health Department.

"5. The mastitis program of the El Paso City-County Health Unit, as enforced, is no different and does not exceed that of the City of Dallas Health Unit, though on paper a more rigid test is required in El Paso.

"6. A person or corporation is not required to obtain a permit to sell milk in the County of El Paso, but is in the City of El Paso, so long as the milk distributed in the County has been awarded a Grade 'A' label by the Health Officer at the point of original sale and such milk and milk products are distributed in the bottles or cartons of the seller.

"7. No person is entitled to use a Grade 'A' label or to maintain a Grade 'A' label unless, and until, the law Art. 165-3 R.C.S. and the Specifications and Requirements of the State Health Officer are complied with.

"8. Bacterial count increases in Grade 'A' milk through age and milk which is Grade 'A' when processed may have an increase in bacterial count through age or the increase in temperature. But, milk may not be degraded unless, and until, it is done so under Section 6 and 7 of the Specifications and Requirements of the State Health Department.

"9. That Section 3 of Art. 165-3 must be read in connection with Section 5 of that Article and Grade 'A' label having been awarded the plaintiff's products in Dallas, Texas, the same is valid unless violated under Section 6 and 7 of the State Specifications and requirements in El Paso, Texas.

"10. I find defendant Cox was authorized and empowered by Section 11 of the Specifications and Requirements of the

State Health Department to examine the herds at Dallas and the storage plants at Pecos and El Paso to determine that the Health Officer at the point of production and pasteurization was enforcing the State Law.

"11. I find that milk from a mastitic cow is not milk from a healthy cow.

"12. I find that the presence of coliform bacteria in milk does not affect the grade or grade labeling of said milk under the Law unless, and until, the average bacterial count shall be determined in compliance with Section 6 and 7 of the Requirements and Specifications of the State Health Officer.

"13. I find that the sanitary Rules and Regulations for food and drug establishments issued pursuant to Art. 4465a and 4466 R.C.S. do not apply to milk and milk products, that Art. 707 of the Penal Statutes defines 'adulterated' and that neither Art. 165-3 nor the Specifications and Requirements of the State Health Officer issued pursuant to said Article define the word 'adulterated'. Section 707, therefore, applies to milk and milk products.

"14. I find that the sale of milk and milk products without a grade label being awarded by the local Health Officer, defendant Cox, did not cause said milk to be adulterated or misbranded within the meaning of Section 1m of the Specifications and Requirements of the State Health Department for the reason that the said milk had been awarded a grade 'A' label by the Dallas Health Officer.

"(Sgd) David E. Mulcahy, "Judge."

■ Appellants fail to point out in their brief wherein any of the above findings are without support in the evidence. We have carefully read and considered the entire Statement of Facts. While appellants introduced a great deal of testimony, largely from Dr. Cox and his staff, which strongly tends to support their contentions, yet there is ample evidence to the contrary. It would unduly prolong this opinion to set out such evidence in detail. Our conclusion is that the evidence is sufficient to sustain each and all of the court's find-ings of fact. This holding disposes of appellants' points (3) Additional Finding 9; (4) Additional Finding 22; (5) Additional Finding 9. Points 6, 7 and 8 are answered by the court's Additional Finding 9 and Additional Conclusions 13 and 14, which we shall discuss later.

We shall now consider appellants' points (1) and (2). The court concluded that appellant was not required to obtain a permit to sell milk in the County of El Paso, but was required to obtain such permit to sell milk in the City of El Paso; that appellee could lawfully sell milk in El Paso County outside of the city limits without a permit. (Additional Conclusions 6 and 9). Art. 165-3 V.A.C.S. is the basic legislative authority for the grading and pasteurization of milk, and with which the Ordinance of the City of El Paso and the Specifications and Requirements of the State Health Officer must conform.

■ Section 11 of the Specifications and Requirements promulgated by the State Health Officer pursuant to Art. 165-3, Section 2 provides: "Sec. 11. Milk and milk products from points beyond the limits of routine inspection.—The sale of milk and milk products from points beyond the limits of routine inspection by a city may be prohibited unless the health officer can satisfy himself that such milk is produced and/or pasteurized under provisions equivalent to those of these specifications and requirements."

Section 6 of the Specifications and Requirements in part provides: "Whenever the average bacterial count, the average reduction time, or the average cooling temperature falls beyond the limit for the grade then held, the health officer shall send written notice thereof to the person concerned, and shall take an additional sample, but not before the lapse of 3 days, for determining a new average in accordance with section 1(S). Violation of the grade requirement by the new average or by any subsequent average during the remainder of the current grading period shall call for immediate degrading or suspension of the permit, unless the last individual result is within the grade limit."

We think these provisions clearly contemplate that the local health officer shall satisfy himself that milk which a distributor desires to sell beyond the limits of routine inspection by a city is produced and/or pasteurized under provisions equivalent to those of the Specifications and Requirements and that he shall issue a permit authorizing such sale before any sale is made. Otherwise there would be no permit to suspend in case of violation of grade requirements as provided in Section 6, and the county's only remedy in case of violation would be by prosecution to recover fines and penalties. Such remedy is entirely inadequate to safeguard the public health. As said in Leach v. Coleman, Tex.Civ.App., 188 S.W.2d 220, loc. cit. 226, Wr.Ref. w. m.: "The requiring of licenses and the reserving of the power to revoke such licenses * * * is well recognized as one of the most effective means of regulating and restraining a business that has yet been discovered, but the power of revocation would amount to little if it could not be vested in an executive officer or board with power to act quickly. * * * The importance of reserving in some executive official the power to revoke can hardly be overestimated. Prosecutions to recover fines and penalties may drag their weary lengths along for weeks and months, and even then prove ineffective; but the revocation of the license remedies the evil and avoids the danger of the spreading of disease at once. It is regulation in the most effective sense."

It does not follow that the court erred in requiring issuance of permits, he having found that appellee had met every requirement to entitle him thereto. Appellants rely on Section 3 of Specifications and Requirements, which provides: "Only a person who complies with these requirements shall be entitled to receive and retain such a permit." Obviously this language was not intended to bar forever anyone who had ever violated the Specifications and Requirements from obtaining a permit when such person was willing and ready to comply with such Specifications and Requirements. Such interpretation would render the quoted language unconstitutional and void.

■ Art. 165–3, Section 3, requires any person desiring to use a Grade "A" label in representing, publishing or advertising any milk or milk products for sale to make application for a permit to the City Health Officer or County Health Officer to use such label. It then provides: "Any city or county health officer receiving such application as provided for in this section is hereby authorized and empowered to take the necessary steps to determine and award the grade of the milk or milk products offered for sale by such applicant, according to the requirements of this Act for grade labels." ;

Article 165–3, Section 4 provides: "No milk or milk products, except those produced or processed by a person, firm, association or corporation having a permit to use a grade 'A' label under the provisions of this Act and which are produced, treated and handled in accordance with the specifications and requirements fixed and promulgated by the State Health Officer for grade 'A' milk and milk products, shall be represented, published, labeled or advertised as being grade 'A' milk or grade 'A' milk products." and Section 5 is as follows: "Sec. 5. Nothing in this Act shall be construed as requiring any person, firm, association or corporation to obtain a permit in order to resell or offer for sale in the same container any milk or milk products, representing or advertising the same as a grade of milk or milk products purchased from any person, firm, association or corporation having a permit to so represent or advertise such milk or milk products."

The Court concluded that Section 3 must be read in connection with Section 5 and that a Grade "A" label having been awarded appellee's products in Dallas, Texas, the same is valid in El Paso, Texas, unless violated under Sections 6 and 7 of the Specifications and Requirements of the State Health Officer. (Additional Conclusion 9). It is appellants' contention that Section 5 applies only to purchases from one having a permit to use the label in El

Paso County. We do not agree with this contention but approve the conclusion of the trial court. It is quite obvious that Sections 4, 5 and 6 of Specifications and Requirements contemplate that grading be accomplished during the period that milk is produced and processed for market. This disposes of appellants' point 6. The court's additional finding 9 and his Additional Conclusions 13 and 14 refute appellants' points 7 and 8. The 1M of the Specifications and requirements referred to in Additional Conclusion 14 is as Follows: "M. Adulterated milk and milk products. —Any milk or milk product which contains any unwholesome substance, or which if defined herein does not conform with its definition, or which carries a grade label unless such grade label has been awarded by a local health officer and not revoked, shall be deemed adulterated and misbranded."

In view of our approval of the Court's Additional Conclusion 9 we also approve Additional Conclusion 14.

The resolutions referred to which were adopted by the El Paso City-County Board of Health at the instance of appellant Cox are:

" * * * that no milk or milk products from points beyond the limits of the jurisdiction of the El Paso City-County Health unit shall be sold or offered for sale in the City or County of El Paso unless it is produced under requirements of the El Paso City-County Health Unit and director of the City-County Health Unit, of milk produced under its examination and supervision, and prior to the issuance of any permit to sell milk from points beyond the limits of inspection of the health department of the El Paso City-County Health Unit, the director of said unit shall satisfy himself that an equivalent mastitis program is being enforced and carried out by the health unit examining the milk and milk products offered for sale in the city and county of El Paso, and that the cows producing said milk are meeting equivalent requirements demanded of the cows under the jurisdiction of the health director of the City-County Health Unit.

" * * * that all persons distributing in El Paso County, including the City of El Paso, milk which is pasteurized outside of the jurisdiction of this Board and its health officers, shall have certified by the health officer or agency approving such pasteurization, the date of its pasteurization, and said milk container shall have printed or stamped thereon, in letters one-fourth of an inch in size, the date said milk was pasteurized, and the place where pasteurized, and no permit shall be issued to any person to distribute, nor shall any label be approved of any concern pasteurizing milk outside the jurisdiction of this Board, which does not contain such information thereon."

The court concluded that these resolutions are void (Conclusion of Law 2) because beyond the power of the Board and discriminatory. We approve this conclusion on the authorities cited by the trial court.

We have carefully considered all of appellants' points and find that they are without merit and overrule them. It follows that it is our conclusion that the judgment must be affirmed. Neither the City of El Paso nor El Paso County is without redress should the grade of appellee's milk fall below the standard fixed by the city ordinance and the Specifications and Requirements of the State Health Officer, or should appellee fail to comply with the ordinance and Specifications and Requirements, or violate the sanitary or health laws of this State. In such event the City and the County each has the power to cancel the permits which the court ordered Dr. Cox and the City to issue. City of Greenville v. Cabell's, Inc., Tex.Civ.App., 207 S.W.2d 898, loc. cit. 900.

The judgment is affirmed.