## CITY OF WESLACO v. C. P. MELTON

No. A-6406. Decided December 4, 1957.
Rehearing overruled January 15, 1958.
(308 S.W. 2d Series 18.)

*Smith, McIlheran & Jenkins* and *Garland F. Smith,* all of City of Weslaco, for petitioner.

The Court of Civil Appeals erred in its failure to rule whether or not the action of a home rule in requiring pasteurization of milk is void as in conflict with Article 165-3, Revised Civil Statutes, and in its holding that the passage of such an ordinance was unreasonable and should be striked down. Gulf, C. & S. F. Ry. Co. v. Calvert, 32 S.W. 246, writ denied; Natural Milk Producers Ass'n. v. San Francisco, 20 Calif. 2d 101, 124 Pac. 2d 25; State v. Edwards, 187 N. C. 259, 121 S. E. 444.

*Kelley, Looney, McLean & Littleton,* of Edinburg, and *C. E. Blodget,* of Tyler, for respondents.

Cited Prescott v. City of Borger, 158 S.W. 2d 528; Falfurrias Creamery Co. v. City of Laredo, 276 S.W. 351; Frank v. Wabash Railroad Co., 295 S.W. 2d 16.

MR. JUSTICE CULVER delivered the opinion of the Court.

Respondent, Melton, seeks to have a certain ordinance of the City of Weslaco, requiring pasteurization of all milk sold and offered for sale within the City, declared unconstitutional and void. He asserts that it is in conflict with and contrary to provisions of the State Statute, Art. 165-3, and, alternatively, that the requirement of pasteurization is an unreasonable exercise of the police power by this home rule city. He also prayed for an injunction restraining the enforcement of the ordinance. Judgment in the trial court went in favor of the City declaring the ordinance valid and denying the injunction. The Court of Civil Appeals reversed and rendered on the ground that the ordinance was an unreasonable exercise of the police power. 301 S.W. 2d 470.

The Court of Civil Appeals correctly assumed that the ordinance does not conflict with the statute, but erred in its holding the the passage of the ordinance did not fall within the scope of the City's police power.

■ Articles 165-3 was enacted for the protection of the public health and is penal in nature. It provides for certain grades and labels for milk and milk products, namely A, B, C and D, both raw and pasteurized. It authorizes the State Health Officer to define and fix specifications for these grades in accordance with the statute and in conformity with the United States Public Health Ordinance. The statute itself demonstrates the intention on the part of the Legislature to provide for and establish grades of milk and specifications therefor as well as the labeling of the same to the end that uniformity shall prevail throughout the State. That intent is also revealed by reference to the emergency clause of the Act reading: "The fact that there are no State standards for the use of milk labels indicating the safety, quality and food value of milk and milk products and the fact that such labels are being used to misrepresent these qualities to the detriment of the public health, creates an emergency * * *." Acts 1937, 45th Legislature p. 353, ch. 172. The

statute neither gives nor withholds the right to sell milk, but only makes provision by which a purchaser may be assured of the quality of milk he buys under the designated grades and labels. It does not forbid the sale of ungraded and unlabeled milk, but it does make it unlawful and a penal offense for anyone to sell milk as a labeled or graded product or to use the grades designated in the statute until he has complied with the specifications and regulations and obtains a permit.

■ The statute does not require, but allows the governing body of any city to make mandatory the grading and labeling of milk and milk products that are sold or offered for sale within the city limits under the United States Standard Milk Ordinance. Section 2 of the statute provides that: "Any city adopting any specifications and regulations for any grade of milk shall be governed by the specifications and regulations promulgated by the State Health Officer, as herein authorized." We take this to mean that the City may not by ordinance vary the specifications or regulations or prescribe different standards from those established by the Act, otherwise confusion would prevail throughout the State as to quality and food value. But a reasonable construction of this quoted provision leads to the further conclusion that a City may adopt any or all of the grades of milk named in the statute, and will be governed as to those so adopted by the specifications and regulations promulgated by the State Health Officer.

The Weslaco Ordinance adopts word for word the short form of the milk ordinance requiring pasteurization as suggested and recommended by the United States Public Health Service, though there is listed at the end of the United States Public Health Ordinance a list of changes in order to accomodate those communities which still find it necessary to permit the sale of raw milk.

Certainly the state preempted the field, by the enactment of this statute, so far as the grading and labeling of milk is concerned, but we find nothing in the statute that creates a conflict with the Weslaco Ordinance in banning the sale of some grades of milk that are named in the statute. Unless this be true a city in the interest of the health of its citizens could not restrain the sale of Grade D raw milk, the lowest grade established by the statute. It may be worthy of note that the United States Milk Ordinance and Code recognizes no grade of milk lower than Grade C.

We have found no reported Texas case that passes precisely on this question. The decisions from other jurisdictions are not decisive for the reason that statutory variations appear. But the following are persuasive and tend to support petitioner's contention of no conflict. Natural Milk Producers Association v. City and County of San Francisco, 20 Cal. 2d 101, 124 Pac. 2d 25;[1] City of Phoenix v. Breuninger, 50 Ariz. 372, 72 Pac. 2d 580; Brielman v. Monroe, 301 Mass. 407, 17 N.E. 2d 187.

To the contrary in State ex rel Knese et al v. Kinsey, 314 Mo. 80, 282 S.W. 437, the Court struck down an ordinance requiring clarification and pasteurization for the reason that the municipality could not lawfully forbid what, it said, the Legislature had expressly authorized. The quoted portions of the Missouri statute are not unlike ours and the Court observes that the statute defines and specifies the milk products which are lawfully for sale. At any rate the statute makes no reference and places no dependence upon the United States Ordinance and Code. It may be further noted that the Court concluded from the evidence that raw milk as a general thing is more nutritious and more easily assimilated, and better food than pasteurized milk. Also a divided court in Shelton v. City of Shelton, 111 Conn. 433, 150 Atl. 811, held a pasteurization ordinance in conflict with the State statute, but quite apparently the statutes of that state varies so greatly from ours that the case cannot be said to offer material assistance to the solution of our problem.

Our Courts of Civil Appeals in several instances have held void certain city ordinances, either as being in conflict with the statute or as imposing unreasonable and arbitrary conditions, but all these ordinances relate to conditions and methods of inspection and processing or grading and labeling. Regardless of whether all these holdings rest upon the proper ground, yet they do not reach the problem presented here, namely, whether a City can lawfully prohibit the sale of some grades of milk that are designated in the statute. Since these cases are cited by respondent on one or the other of his counter points we will discuss them briefly.

In Cabell's, Inc. v. City of Nacogdoches, 288 S.W. 2d 154, the ordinance required that all milk offered or sold in the City should have a milk fat content of at least four per cent. The

[1]See same case, 317 U.S. 423, 63 Sup. Ct. 359, 87 L. Ed. 375, and 24 Cal. 2d 122, 148 Pac. 2d 377.

statute (Sec. 1) defines milk, in part, as containing not less than three and one-fourth per cent milk fat. The ordinance was, therefore, held to be invalid for the reason that it attempted to set up a different standard to that imposed by the statute. The ordinance in no way related to the matter of public health or to the prevention of disease.

In City of Greenville v. Pratt, 214 S.W. 2d 179, the Court points out that the City could not reasonably impose on intrastate dealers the added expense and inconvenience of Federal inspection while at the same time it merely required the equivalent of that Federal standard at the local packing plant.

In City of Abilene v. Tennessee Dairies, 225 S.W. 2d 429, the question of reasonableness of the ordinance hinged upon the right of the City to require an inspection fee of $2.50 per 1,000 gallons on all milk produced and purchased where the milk plant was located outside the City, but charged a fee of only one-fourth of that amount if the plant was located within the City. While the Tennessee Dairies in that case processed some 23,000 gallons of milk per day in Dallas, only about 90 gallons of that milk was sold in Abilene. Compliance with this ordinance would require the appellee to pay an inspection fee on all of the milk processed in Dallas. There was no question as to the proper inspection by the officers of the City of Dallas and of the State of Texas. Manifestly this was an unreasonable and inequitable burden upon the appellee. Generally to the same effect is the decision in Falfurrias Creamery Co. v. City of Laredo, 276 S.W. 2d 351.

The question presented in Prescott v. City of Borger, 158 S.W. 2d 578, was not whether it lay within the police power of the City to require pasteurization of milk, but rather whether that process must necessarily be performed in Hutchinson County. The Court very properly held that the requisite of local pasteurization was arbitrary and unreasonable and therefore unconstitutional. The same question was raised and similarly decided in City of Electra v. Carnation Co., 207 S.W. 2d 192. Again in City of El Paso v. Russell Glenn Distributing Co., 237 S.W. 2d 818, the attacked ordinance related solely to grading and labeling. The Court held that the Grade A label having been awarded to appellee's production in Dallas, the same must be valid in El Paso unless shown to be violated under the specifications and requirements of the State Health Officer.

■ The passage of the ordinance in question here was not an un-

reasonable exercise of the police power granted to the City by law. The validity of an ordinance is presumed and before the courts can interfere with its operations, the ordinance must clearly appear to be arbitrary, unreasonable and an abuse of the police power. The burden of that showing rests upon the party attacking the ordinance. Town of Ascarate v. Villalobos, 148 Texas 254, 223 S.W. 2d 945.

■ To be sure, the evidence here discloses that respondent's Grade A raw milk was produced in compliance with all Federal, State and County regulations and specifications, that it was wholesome for human consumption and the respondent holds the necessary State and County permits. All that, however, does not establish the unreasonableness of an ordinance designed to protect the public health against the possibility of milk borne diseases. Conceding that there is some variety of opinion as to the desirability and importance of pasteurization and some very respectable authority to the contrary, nevertheless the courts take judicial notice of the fact that pasteurization of milk is a widely recognized and approved. method of prevention of disease and one commonly followed and practiced throughout the United States. City of Phoenix v. Breuninger, supra. As put by the Health Officer of the City of Weslaco, a medical doctor, "there are valid medical reasons universally accepted by the medical profession for the pasteurization of milk in controlling milk borne diseases." The United States Public Health Service recommends that every effort be made to limit the sale of milk to pasteurized milk only.[2] The Public Health Service reports, that as of 1955, six states forbid the sale of any but pasteurized milk and approximately 1,000 municipalities, together with many entire counties throughout forty-two states of the Union and including Texas, do likewise. In Natural Milk Producers Association v. San Francisco, supra, the Court observes: "It has been held repeatedly that it is within the scope of the police power to require for the protection of the public health that all milk for human consumption must be pasteurized. It cannot be doubted, therefore, that the requirement that all milk for human consumption be pasteurized is a proper police regulation." We have found no decision holding to the contrary.

We hold the Weslaco Ordinance in requiring pasteurization does not run counter to the State statutes and that it does lie within the scope of the City's police power as a well recognized protection for the health of its inhabitants.

[2]United States Public Health Milk Ordinance and Code 1953, Introduction p. X.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Associate Justice Griffin dissenting.

Opinion delivered December 4, 1957.