The Honorable Dan R. Beck County Attorney County of Fayette La Grange, Texas 78945
Re: Whether a county and city may loan revenue sharing funds to a student to finance his medical education in return for a promise that he will serve as county health officer and maintain practice in the city for a specified time after licensing.
Dear Mr. Beck:
You have asked our opinion whether Fayette County and the City of Flatonia may loan federal revenue sharing funds to a medical student in exchange for the student's contractual promise that he will serve as the county's health officer and maintain a private practice of medicine in Flatonia for a period of five years after he is licensed. The loan would be in an aggregate amount of $12,000, of which the student would be required to repay $9,000, without interest, after graduation. The remaining $3,000 debt would be discharged in partial consideration for his services. You state that Flatonia presently has no clinic, no physicians, and no medical facilities.
We have previously addressed the constitutionality of a program similar to the one you propose in Letter Advisory No. 90 (1975). In that document we found no constitutional infirmity in a proposal under which a loan from the Texas Opportunity Plan Fund to a medical student might be canceled upon his employment by one of several state agencies. The proposal considered there has now been enacted as section 52.40 of the Education Code. Although your inquiry involves political subdivisions of the state, rather than state agencies, we nonetheless consider the reasoning of Letter Advisory No. 90 to be in point. We found no violation of either sections 51 or 55 of article 3 of the Texas constitution in that opinion:
 In our view a doctor or psychologist gives adequate consideration for the partial or total release of his obligation by serving the State in his professional capacity. We see no meaningful distinction between higher salaries and this form of compensation for public service.
Although political subdivisions are also subject to article 3, section 52 of the constitution, the applicable language is the same as found in sections 50 and 51 of article 3:
 Sec. 50. The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State in aid of, or to any person . . . or to pledge the credit of the State in any manner whatsoever . . . .
 Sec. 51. The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual . . . .
 Sec. 52. The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual . . . .
We have previously said that these provisions of the constitution would not prevent the establishment of a program to guarantee student loans, upon a finding that a public purpose would thereby be accomplished, provided the program included sufficient controls to assure that the public purpose would actually be served, and upon assurance that the contracting governmental entity would receive adequate consideration or benefit for the services provided to private parties. Letter Advisory No. 119 (1977). See also Attorney General Opinions H-445; H-416; H-403 (1974). We believe the same standards are applicable to the program you propose. We have previously concluded that the establishment, staffing and operation of a community medical clinic constitutes a public purpose, Attorney General Opinion H-912 (1976), and that professional service by a physician constitutes sufficient consideration to justify the partial release of his debt. Letter Advisory No. 90 (1975). The program you propose presents no constitutional infirmity, per se, provided it includes, contractually or otherwise, sufficient safeguards that its public purpose will actually be served. Any such contract will need to be examined to determine the adequacy of such safeguards.
We likewise perceive no question as to the authority of a city or county to appropriate and expend money for a program to promote the public health. See V.T.C.S. arts. 1015; 4418f. Expenses necessary to maintain the public health are `priority expenditures' for which federal revenue sharing funds received before January 1, 1977, could be spent. Pub.L. No. 92-512, tit. I, § 103, 86 Stat. 919 (formerly 31 U.S.C. § 1222). With the repeal of the requirement that such funds be used only for `priority expenditures,' Pub.L. No. 94-488, § 3(a), 90 Stat. 2341, we believe it clear that revenue sharing funds may be utilized for a program such as you propose.
We are aware that article 3, section 50a of the constitution authorizes the legislature to establish a State Medical Education Fund to provide grants and loans to students desiring to practice medicine in the rural areas of the state. We do not believe, however, that this constitutional provision or article 4498c, V.T.C.S., which establishes the State Rural Medical Education Board, prevent Fayette County and the City of Flatonia from undertaking the program you propose. Neither article 3, section 50a of the constitution nor article 4498c indicate any intention to preempt the field as to assisting medical students who agree to practice medicine in rural areas. Subdivisions of the state may, where otherwise authorized, validly undertake programs to promote the public health, safety or welfare, even though the legislature may also act on the subject, so long as local programs and regulations are not inconsistent with the constitution or general legislation. City of Weslaco v. Melton,308 S.W.2d 18 (Tex. 1957); Ex parte Mooney, 291 S.W. 246
(Tex.Crim.App. 1927). Compare Tex. Const. art. 16, § 39 with V.T.C.S. art. 6145.1.
 SUMMARY
Providing sufficient safequards are provided to guarantee that such public purpose will be served, Fayette County and the City of Flatonia may loan federal revenue sharing funds to a medical student in exchange for the student's contractual promise that he will serve as the county's health officer and maintain a private practice of medicine in the city for five years after he is licensed, and a portion of the loan may be discharged in partial consideration for the physician's services during the five year period.
Very truly yours,
John L. Hill Attorney General of Texas
Approved:
David M. Kendall First Assistant
C. Robert Heath Chairman Opinion Committee