The CITY OF HOUSTON, Appellant,

v.

Willimer C. MITCHELL, Individually and d/b/a Palace Video, E.K. Smith; James P. Tipa, Individually and d/b/a Telephone Road News and Video, and A.C. Cremona, Jr., Appellees.

No. B14–86–713–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 30, 1987.

Rehearing Denied Sept. 17, 1987.

Gilbert D. Douglas, Houston, for appellant.

Michael Maness, Gerald M. Birnberg, Charles R. Young, Houston, for appellees.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

MURPHY, Justice.

This is an appeal from an order denying two petitions for injunctive relief. The actions were brought by The City of Houston to enjoin violations of City Ordinance No. 85–1337 (the Ordinance) relating to lighting and structural configuration of adult arcades and requiring a permit for the operation of such businesses. In two points of error appellant complains that the trial court erred in finding that the Ordinance, as it relates to dangers in the public health may not be enforced by injunction pursuant to Tex.Rev.Civ.Stat.Ann. art. 1175f (Vernon Supp.1987) (the Act), and in finding that the Ordinance, as it relates to fire safety, does not evidence substantial danger to any person and is therefore not authorized to be enforced by injunction pursuant to the Act. We affirm.

On August 6, 1985, appellant passed ordinance no. 85–1337 which requires that proprietors of adult arcades must obtain a permit for the arcade. The following definitions found in the Ordinance are relevant:

*Adult arcade* shall mean any 'premises' to which members of the public or members of any club, group or association are admitted and permitted to use one or more 'arcade devices'.

*Arcade device* shall mean any coin or slug operated or electronically or mechanically controlled machine or device that dispenses or effectuates the dispensing of 'entertainment', that is intended for the viewing of five or fewer persons in exchange for any payment of any consideration.

*Entertainment* shall mean (1) any live exhibition, display or performance, or (2) any still picture(s) or movie picture(s), whether mechanically, electrically or electronically displayed, or (3) any combination of the foregoing, in which the 'specified sexual activities' are depicted.

*Specified sexual activities* shall mean (1) human genitals in a state of sexual stimulation or arousal, (2) acts of human masturbation, sexual intercourse or sodomy, (3) fondling or other erotic touching of human genitals, pubic regions, buttock or female breast, or (4) any combination thereof.

In order to obtain a permit, an adult arcade must comply with the design requirements enumerated in the ordinance:

Sec. 28–101. *View from manager's station.*

(a) If an adult arcade has one manager's station designated pursuant to section 28–93(c) of this code, then the interior of the adult arcade shall be configured in such a manner that there is an unobstructed view of every area of the adult arcade to which any patron is permitted access for any purpose from that manager's station. If an adult arcade has two or more manager's stations designated pursuant to section 28–93(c) then the interior of the adult arcade shall be configured in such a manner that there is an unobstructed view of each area of the

adult arcade to which any patron is permitted access for any purpose from at least one of the manager's stations. The view required in this subsection must be by direct line of sight from the manager's station.

(b) It shall be the duty of the owners and operator, and it shall also be the duty of any agents and employees present in an adult arcade to ensure that the view area specified in subsection (a) remains unobstructed by any merchandise, display racks or other materials at all times that any patron is present in the adult arcade and to ensure that no patron is permitted access to any area of the adult arcade which has been designated as an area in which patrons will not be permitted in the plan filed pursuant to section 28–92(c) of this Code.

Sec. 28–102. *Lighting.*

(a) Each adult arcade shall be equipped with overhead lighting fixtures of sufficient intensity to illuminate every place to which patrons are permitted access at an illumination of not less than one (1.0) foot candle as measured at the floor level.

(b) It shall be the duty of the owners and operator and it shall also be the duty of any agents and employees present in an adult arcade to ensure that the illumination (a), above, is maintained at all times that any patron is present in the adult arcade.

The Ordinance effectively prohibits adult entertainment establishments from operating so called "peep-shows": enclosed booths wherein patrons may, using an "arcade device", view "entertainment" as defined in the ordinance.

On January 31, 1986, appellant filed two petitions for injunctive relief; one against the proprietor of "Palace Video" and his lessor, and one against the proprietor of "Telephone Road News and Video" and his lessor. The two causes were consolidated. Appellant's suits for injunction for failure to obtain a permit under the Ordinance were brought pursuant to the Act, entitled Civil enforcement of certain health and safety ordinances. Section 2 of the Act provides in pertinent part:

Sec. 2. A city may bring a civil action in accordance with this Act for the enforcement of any of the following ordinances:

(1) an ordinance relating to the manner, materials, methods, or means of construction of any building or other structure or improvement, including the foundation, structural elements, electrical wiring or apparatus, plumbing and fixtures, entrances, or exits, and having for its purpose the preservation of public safety;

(2) an ordinance relating to the fire safety of any building or other structure or improvement, including provisions relating to materials, types of construction or design, warning devices, sprinklers or other fire suppression devices, availability of water supply for extinguishing fires, or location, design, or width of entrances or exits.

Tex.Rev.Civ.Stat.Ann. art. 1175f (Vernon Supp.1987). Section 3 of the Act provides for enforcement of any such ordinance by injunction:

Sec. 3. (a) A city may obtain, upon showing a substantial danger of injury or adverse health impact to any person or to any property of any person other than the defendant, an injunction against the owner or owner's representative with control over the premises that:

(1) prohibits specified future conduct in violation of the ordinance; and

(2) requires specific conduct necessary to achieve compliance with the ordinance.

(b) It is not necessary for the city to prove that no other adequate remedy or penalty for a violation exists or to show that prosecution in a criminal action has occurred or has been attempted. The court may punish violation of its orders in accordance with its general and statutory powers of contempt, and each separate instance of contempt is separately punishable.

*Id.*

The trial court denied the injunction. The court determined that the Ordinance is

not the type contemplated by the legislature under section 2(1) of the Act and that although the Ordinance is one that may be enforced under section 2(2) of the Act, appellant failed to show a substantial danger as required by section 3 of the Act.

■ In its first point of error appellant complains that the trial court erred in holding that the Ordinance may not be enforced by injunction pursuant to section 2(1) and section 3 of the Act. The ordinance prohibits the interior partition of adult arcades into fully or partly enclosed booths. The Ordinance requires "an unobstructed view of every area to which any patron is permitted access...." Appellant argues that since the Ordinance addresses the interior configuration and construction of buildings, it is, on its face, "an ordinance relating to the manner ... methods, or means of construction of any building or other structure or improvement, including ... structural elements ... and fixtures ..." as specified by section 2(1) of the Act.

However, the Ordinance is not one specified in section 2(1) of the Act; rather it relates only to the design of adult arcades. The main purpose of the Ordinance is to prevent sexual encounters in peep shows. The Ordinance seeks to accomplish its objective by prohibiting owners of adult arcades from operating in a building with a design which includes fully or partly enclosed booths. A reading of section 2(1) of the Act demonstrates its application to ordinances the purposes of which are to ensure that buildings, other structures or improvements are safe in such a way that the structure will not endanger the public safety. Home rule cities may use section 2(1) of the Act for many purposes such as enforcing requirements related to the structural integrity of buildings, requiring certain minimum grades of materials be used in building construction, or requiring that electrical wiring be insulated. They may not use section 2(1) to place restrictions on the interior design of certain businesses to ensure that private sexual activity will not occur. Whether or not a building is designed to include fully or partly enclosed booths has nothing to do with "the manner

... methods, or means of construction of any building or other structure or improvement, including structural elements ... and fixtures ..." Tex.Rev.Civ.Stat.Ann. art. 1175f, § 2(1) (Vernon Supp.1987). Appellant may enact an ordinance which requires a particular minimum grade of quality materials which must be used in the construction of the fully or partly enclosed booths if the public safety requires such regulation but it may not control the design of the building.

■ Our position is consistent with the doctrine of ejusdem generis. The requirements sought to be enforced, relating to interior design, are not within any of the classes of construction and related areas enumerated in section 2(1) of the Act. Pursuant to the doctrine of ejusdem generis, the enumeration of specific matters included within the general class of "manner, materials, methods or means of construction" without mention of design, precludes application of the Act to other, non-enumerated matter:

It is a principle of statutory construction everywhere recognized and acted upon ... that where words particularly designating specific acts or things are ... associated with words of general import, comprehensively designating acts or things, the latter are generally to be regarded as comprehending only matters of the same kind or class as those particularly stated. They are to be deemed to have been used, not in the broad sense which they might bear if standing alone, but as related to the words of more definite and particular meaning with which they are associated.

The rule is based on the obvious reason that if the Legislature had intended the general words to be used in their unrestricted sense, they would have made no mention of the particular classes.

*Farmers & Mechanics National Bank v. Hanks,* 104 Tex. 320, 137 S.W. 1120, 1124 (1911). Appellant's first point of error is overruled.

■ In its second point of error appellant claims the trial court erred in its determination that the Ordinance, as it relates to

fire safety, does not evidence a substantial danger to persons other than the defendants and is therefore not authorized to be enforced by injunction pursuant to the Act. The trial court concluded, with respect to section 2(2) of the Act, relating to fire safety, that appellant "failed to meet its burden of proof to show a substantial danger of injury or adverse health impact to any person or any property of any person other than the defendants by reason of the defendants' violations of the fire safety provisions of the ordinance."

We do not agree with the trial court that the Ordinance is the type that could be enforced under section 2(2) of the Act relating to fire safety. Any claim that the Ordinance is related to fire safety and thus enforceable under section 2(2) of the Act is undermined by the fact that the owners of Telephone Road News and Video and Palace Video could begin showing only children's cartoons in the peep-show booths and completely escape any sanctioning by reason of the ordinance. This result shows the flaw in appellant's position. Many businesses and public gathering places have partially and fully enclosed booths, some with locks on the doors. However the Ordinance does not apply to department store dressing rooms, public restrooms with enclosed stalls inside them, or the many other buildings which contain enclosed booths. If the Ordinance's requirement of a view from the manager's station, "unobstructed by any merchandise, display racks or other materials" is necessary to promote fire safety, then grocery and general merchandise stores must be very dangerous places. The narrow limitation of the application of the Ordinance to adult arcades calls into question appellant's attempt to justify it by claiming that it is necessary to promote fire safety.

■ Although we believe that the trial court could have reached its decision by finding that the Ordinance is not the type that was contemplated by the legislature when it enacted section 2(2) of the Act, we do agree with the court's determination that appellant failed to show a substantial danger of injury to person or property as required by section 3 of the Act. Appellant presented no evidence that anyone had ever been injured as a result of a fire in the adult arcade section of a business. Appellant offered only the testimony of one fire inspector who stated that the requirements of the Ordinance would contribute to fire safety and its own legislative fact findings that the Ordinance would improve fire safety. There was no evidence that either the Telephone Road News and Video or Palace Video stores had been found to be unsafe by fire inspectors. Appellant's evidence fails to satisfy section 3 of the Act which requires a showing of substantial danger of injury before an injunction will issue. Appellant's second point of error is overruled.

The judgment is affirmed.

PAUL PRESSLER, Justice.

I respectfully dissent. The trial court erred when it determined that the Ordinance was not the type authorized by the legislature under section 2(1) of the Act.

The City Council is the legislative body of the City of Houston, and it has the authority and responsibility to determine whether the construction and method of operation of "adult arcades" so adversely affects the health, safety and welfare of the inhabitants of the city as to allow the exercise of its police power in regulating them. Neither the trial court nor this Court may substitute its finding of fact for that of the City Council in a situation such as this. *City of Abilene v. Woodlock*, 282 S.W.2d 736 (Tex.Civ.App.—Eastland 1955, writ ref'd) *cert. denied* 351 U.S. 925, 76 S.Ct. 782, 100 L.Ed. 1455; *City of Houston v. Johnny Frank's Auto Parts*, 480 S.W.2d 774 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.); *Safe Water Foundation v. City of Houston*, 661 S.W.2d 190 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.) *appeal dismissed* 469 U.S. 801, 105 S.Ct. 55, 83 L.Ed.2d 6.

The Council's reasonable finding that a condition exists, the control of which is a proper exercise of its police power, must be accepted by the courts as a basis for the validity of the objective of an ordinance if there is any legally sufficient evidence to

support such a finding. *Smith v. Davis,* 426 S.W.2d 827 (Tex.Sup.1968); *City of Waxahachie v. Watkins,* 154 Tex. 206, 275 S.W.2d 477 (1955).

The Ordinance contains legislative findings of fact, based on reports from public health, fire and police officials and testimony at a public hearing, that adult arcades configured with enclosed booths represent a danger both to the public health, by facilitating sexual encounters and sexually transmitted diseases, and by creating a fire safety hazard.

An ordinance is presumed to be valid and the burden of showing its invalidity rests on the party attacking it. When a city government passes an ordinance that is final and conclusive, it cannot be revised by the courts unless the passing of the ordinance was arbitrary, unreasonable, and a clear abuse of power. *Town of Ascarate v. Villalobos,* 148 Tex. 254, 223 S.W.2d 945 (1949); *City of Weslaco v. Melton,* 158 Tex. 61, 308 S.W.2d 18 (1957).

The Ordinance is clearly of a type contemplated by the Act in that it addresses the interior configuration and construction of buildings, and is, on its face, "an ordinance relating to the manner ... methods, or means of construction of any building or other structure or improvement, including ... structural elements ... and fixtures...." The enclosed booths that the Ordinance seeks to eliminate are substantial structures of wood and sheetrock, which possess individual doors, and which extend from floor to ceiling. Although reasonable minds may differ as to whether a particular ordinance is an act in furtherance of the public's health, safety, and welfare, this is no indication in the case at bar that the City clearly abused its discretion. *City of Abilene, supra.*

The trial court also found that the appellant failed to show a substantial danger of injury or adverse health impact as required by section 3 of the Act. When a society is attempting to protect and preserve itself, it should not have to wait for a specific injury to take place to prove that its course of action would be beneficial. We are presently faced with an epidemic of sobering consequences and proportions. A valid purpose of the Ordinance is to prevent the spread of life-threatening, sexually-transmitted diseases which endanger our society. It is hard to imagine a more dangerous health hazard or one from which there needs to be greater protection.

The trial court's narrow reading of the Act takes from society a valuable tool for self-preservation. A society without effective means to preserve itself is a society that cannot survive. The legislature, in passing the Act, intended to enable cities to pass and enforce ordinances to counter real and perceived threats to public health and safety. The Ordinance is clearly aimed at a very real public health concern and employs a legitimate and legislatively authorized means to combat that threat. Not allowing the enforcement of the ordinance by an injunction cripples appellant's efforts to provide for the public welfare of its citizens through health and safety ordinances. The Ordinance is of the type contemplated under section 2(1) and 2(2) of the Act and an injunction should have been issued to enforce it. I, therefore, respectfully dissent.