## CITY OF PORT ARTHUR et al. v. CARNATION CO. et al.

### No. 4683.

Court of Civil Appeals of Texas. Beaumont.

March 25, 1951.

Harold Clayton, Port Arthur, for appellant.

Tatum, Camp & Ball, Beaumont, for appellee.

COE, Chief Justice.

This was an action filed in the 58th Judicial District Court of Jefferson County by Carnation Company and Sam E. Von Rosenberg, D/B/A Rosenberg's Farms, suing on behalf of himself and all other milk producers similarly situated against the City of Port Arthur, Jefferson County, Texas, and various city officials wherein the appellees sought to enjoin enforcement of two city ordinances of the City of Port Arthur, Texas, same being ordinances Nos. 1354 and 1355. The appellees in the trial court were granted a temporary injunction, and on the trial below the trial court held that the two ordinances involved were void; being in conflict with the general laws of Texas, and that such ordinances deprived plaintiffs of their property without due process and further deprived plaintiffs of legal protection of the law and that such ordinances were unconstitutional, illegal, unreasonable, arbitrary, capricious, and discriminatory and null and void and for such reasons, made such temporary injunction permanent. This case was tried before the court without a jury. No findings of fact were made other than those recited in the judgment. The two ordinances complained of, the enforcement of which was enjoined by the trial court, are as follows: (We are omitting the captions and signatures).

"Section 3. (a) Permits—It shall be unlawful for any person to bring into or receive into the City of Port Arthur, Texas, or its police jurisdiction, for sale, or to sell, or offer for sale therein, or to have in storage where milk or milk products are sold or served, any milk or milk product defined in this ordinance, who does not possess a permit from the health officer of the City of Port Arthur, Texas.

"Section 3. (b) Application For Permit—All applications for such permits shall be in writing and upon such forms as are prescribed and furnished by the health officer and shall set forth, among other things, the following: The name of the applicant, the nature of the business; the location of the business; and such other information as may be required by the health officer.

"Section 3. (c) Investigation Of The Applicant—Upon receiving such application, the health officer shall make or cause to be made, an inspection of the premises and an investigation of the method and conduct of the applicant's business, and in the event the conditions of the said premises and the conduct of the business complies with all of the sanitary laws of the State of Texas, as well as the requirements of all sanitary ordinances of the City of Port Arthur, and the Department of Public Health rules and regulations governing sanitation and protection of public health and regulating and controlling the sale of products named herein, the health officer, shall approve such application.

"Section 3. (d) Issuance Of Permit— A permit in writing shall be issued the applicant when the applicant has complied with the requirements of all laws, rules and regulations governing sanitation, and protection of public health, and has furnished satisfactory proof of such future compliance, and has paid the fee or fees applicable thereto as set forth in Section 3-A of this ordinance, as amended, and the permit is to continue in full force and effect from the time issued until cancelled or revoked for cause by the health officer of the City of Port Arthur, and shall not be transferrable, and a failure in compliance with any ordinance, general law or rule and regulation of the Public Health Department shall be deemed cause. Said permit shall be displayed at all times in a conspicuous place within the place of business for which the permit has been issued."

"All ordinances or parts of ordinances in conflict herewith are hereby repealed.

"This being an ordinance amending an ordinance providing a penalty for the violation of its provisions, the same shall be published once in the Port Arthur News, the official newspaper of the City of Port Arthur, and having a general circulation

in said city, and the same shall be effective ten (10) days after such publication.

Read, Adopted And Approved by at least a majority of the City Commission of the City of Port Arthur, in a regular meeting held in said city on the 25th day of January, A.D. 1949."

"3-A. Inspection Fees—Permit Or License—Each milk plant engaged in processing or in distribution of milk or milk products, all or any part of which is to be sold or offered for sale within the City of Port Arthur, shall pay an inspection fee of Fifty (50¢) cents per one thousand (1,000) quarts of milk and milk products, said inspection fee to be computed on the total amount of milk and milk products received into or distributed from any such milk plant, whichever amount is greater. Said inspection fees shall be collected monthly by the City of Port Arthur upon the basis of a sworn monthly report to be prepared by the permit holder after the close of business on the last day of each month, such report showing the total volume of milk and milk products received into and distributed from such plant during such period, and which report shall be submitted not later than the 10th day of the succeeding month, to the health officer, who shall upon receipt of such report compute in accordance with the foregoing schedule the inspection fee to be paid, and prepare invoices in triplicate for such fees, and send one of such invoices to the permit holder and one to the Assessor and Collector of Taxes in the City of Port Arthur. Thereafter, within ten (10) days from the date of the invoice, the permit holder shall pay to the Assessor and Collector of Taxes of the City of Port Arthur the sum for inspection fees for which he has been billed by invoice.

"(B) Each milk distributor shall obtain a permit in writing to distribute milk and do business in the City of Port Arthur under the terms of this ordinance as hereinbefore set out and as defined herein. Such permit shall not be issued unless and until such milk distributor shall furnish satisfactory proof to the City Health Officer that all milk or milk products to be distributed by such milk distributor shall have been received directly from a milk plant which is the holder of a permit under the provisions of this ordinance. The fee for such milk distributor's permit shall be Ten ($10.00) Dollars per year, provided, however, that such milk distributor's permit shall not be required of any milk plant acting as its own distributor.

"(C) 1. Each dairy or dairy farm from which milk or milk products are being supplied to any milk plant, either directly or indirectly, from which milk or milk products are being distributed within the City of Port Arthur shall be required to obtain a permit from the Health Officer of the City of Port Arthur under the provisions of this ordinance. The fee for such permit shall be the sum of Ten ($10.00) Dollars per year.

"2. It shall be unlawful for any milk plant selling milk or milk products within the City of Port Arthur to receive any milk or milk products from any dairy or dairy farm for which a permit has not been issued by the Health Officer under the terms of this ordinance.

"(D) Such licenses or permits issued under the terms of this ordinance shall expire on the 31st day of December of each year for which issued. Such licenses or permits may be issued for an unexpired portion of any calendar year upon the payment in advance of the pro-rata part of the annual fee. No license or permit issued in accordance with the provisions of this ordinance shall be transferrable. No refund shall be made by the City of Port Arthur, Texas, on all or any part of any license or permit fees collected under the provisions of this ordinance.

"(E) All fees collected hereunder shall be used for the complete execution of the provisions of this ordinance.

"1. All ordinances or parts of ordinances in conflict herewith are hereby repealed.

"2. This ordinance, being an ordinance amending an ordinance providing a penalty for the violation of its provisions, the same shall be published once in the Port Arthur News, the official newspaper of the City of Port Arthur, and having a general circulation in said city; and this ordinance

shall be effective ten (10) days from and after such publication.

"Read, Adopted And Approved by at least a majority of the City Commission of the City of Port Arthur, at a regular meeting held on the 25th day of January, 1949."

The trial court concluded that these two ordinances are in conflict with the general laws of the State of Texas, and deprived plaintiffs of their property without due process and deprived plaintiffs of the equal protection of the laws and are unconstitutional, illegal, unreasonable, arbitrary, capricious, discriminatory, ultra vires, in restraint of trade, vague and indefinite and constitute occupation taxes and revenue measures and are contrary to law in an attempt to unlawfully delegate legislative power and vest arbitrary power in the health officer of the City of Port Arthur to issue and revoke permits, and are null and void; that the Carnation Company on March 9, 1949, obtained a permit from defendant Dr. G. R. Solis, City Health Officer of defendant City of Port Arthur, to sell and distribute in the City of Port Arthur Grade "A" pasteurized milk from its Houston milk plant; that at the time said permit was issued and at this time the milk from the milk plant of Carnation Company which Carnation Company intended to sell and is now selling in Port Arthur, and the milk of the plaintiffs, milk producers herein, was then and is now Grade "A" pasteurized milk and Grade "A" raw milk, respectively; that the provisions of the milk ordinance of the City of Houston are equivalent to milk ordinance No. 1242 of the City of Port Arthur for Grade "A" raw and Grade "A" pasteurized milk and the provisions of the City of Houston milk ordinance and the milk ordinance No. 1242 of the City of Port Arthur are equivalent to the grade specifications and requirements promulgated by the State Health Officer for Grade "A" raw and Grade "A" pasteurized milk and of the provisions of the United States Public Health Service milk ordinance for Grade "A" raw and Grade "A" pasteurized milk; that on March 9, 1949, and at this time the Health Officer of the City of Houston was and is properly enforcing the City of Houston milk ordinance and the grade specifications and requirements promulgated by the City Health Officer for Grade "A" raw and Grade "A" pasteurized milk; that the same inspectors for the City Health Department supervise inspection of and inspect the milk, dairies, receiving stations and milk plants (including plaintiffs here) in the Houston milk shed; that plaintiff Carnation Company is selling approximately seven hundred gallons of Grade "A" pasteurized milk per day in the City of Port Arthur; that plaintiff Carnation Company is processing in its Houston milk plant approximately twenty thousand gallons of milk per day; that the inspection fee imposed upon plaintiff Carnation Company by said ordinances Nos. 1354 and 1355 of the City of Port Arthur is approximately $40 per day, and the inspection fee imposed upon plaintiffs milk producers is $10 each per year; that defendants have threatened to revoke said permit of plaintiff Carnation Company and are now threatening to revoke the same and refuse to renew the same or issue a Grade "A" pasteurized milk permit to plaintiff Carnation Company, unless plaintiffs comply fully with all of the provisions of ordinances Nos. 1354 and 1355 of the City of Port Arthur; that defendants have threatened and are now threatening to arrest and prosecute plaintiff Carnation Company, their agents, servants and employees for selling, delivering and distributing Grade "A" pasteurized milk and milk products from its Houston milk plant in the City of Port Arthur, and the defendants have threatened and are now threatening to arrest and prosecute plaintiffs milk producers, their agents, servants and employees for selling Grade "A" raw milk to plaintiff Carnation Company in Houston, Texas, without securing Grade "A" raw milk permits from defendant City of Port Arthur and paying said $10 permit fee each to defendant City of Port Arthur; that plaintiffs are ready, able and willing to make their sales and deliveries aforesaid and if molested or interfered with therein by defendants, plaintiffs will sustain a daily business loss to the extent of

the sales set out above and will suffer irreparable injuries and damages.

Upon these findings the trial court perpetually enjoined the City of Port Arthur and the various city officials, including Dr. G. R. Solis, Acting City Health Officer, from enforcing or attempting to enforce said ordinances Nos. 1354 and 1355 of the City of Port Arthur as against the plaintiffs in the trial court who are the appellees here, and from revoking or threatening to revoke the Grade "A" pasteurized milk permit of Carnation Company for failure of Carnation Company to pay the inspection fee imposed under ordinances Nos. 1354 and 1355 and/or for failure of plaintiff Sam E. Von Rosenberg, D/B/A Rosenberg's Farms and the other milk producers or any of them to secure Grade "A" raw milk permits to the City of Port Arthur, and from filing or threatening to file criminal charges against and/or arresting or threatening to arrest or cause the arrest of plaintiff Carnation Company, its agents, servants or employees for selling, delivering or distributing Grade "A" pasteurized milk and milk products from its Houston milk plant in the City of Port Arthur, and from harrassing, molesting or in any manner directly or indirectly interfering with plaintiff Carnation Company, its agents, servants, and employees in the sale, delivery and distribution of Grade "A" pasteurized milk from its Houston milk plant in the City of Port Arthur and from collecting or attempting to collect inspection fees provided for in ordinances Nos. 1354 and 1355 from plaintiff Carnation Company. The remaining portion of the order is almost a repetition of what has heretofore been set out, but speaking generally it enjoins the City of Port Arthur and its officials from enforcing or threatening to enforce ordinances Nos. 1354 and 1355 as against the appellees. The appellants challenge the soundness of the trial court's conclusions that said ordinances are in conflict with the general laws of the State of Texas and deprive plaintiffs of their property rights without due process and deprive plaintiffs of equal protection of the laws, and are unconstitutional, unreasonable, arbitrary, capricious, discriminatory, ultra vires, in restraint of trade, vague and indefinite and constitute occupation taxes and revenue measures contrary to law and an attempt to unlawfully delegate power and vest arbitrary power in the health officer of the City of Port Arthur to issue and revoke permits and are null and void.

The Carnation Company operates a Grade "A" pasteurization milk plant in the City of Houston, Texas. It receives into and distributes from its said Houston milk plant approximately twenty thousand gallons of milk daily, which milk Carnation Company purchases from some 485 dairies, these dairies are located in what is referred to as the Houston milk shed. Of these twenty thousand gallons processed, the said company sells about seven hundred gallons of Grade "A" pasteurized milk per day in the City of Port Arthur. Milk from the Carnation Company's Houston milk plant is sold in an area of about 100 miles radius from Houston, Texas, in approximately 60 cities, and is sold in all of them as Grade "A" pasteurized milk. Appellee Sam E. Von Rosenberg, D/B/A Rosenberg's Farms has his dairy located at LaGrange, Texas, and is producing 1150 pounds of milk per day and is selling it all to Carnation Company of Houston, Texas. His dairy, as well as the other dairies are inspected by the Houston Health Department about once per month and he has a Grade "A" milk permit from the Houston Health Department for said dairy. He is not selling milk in Port Arthur and does not intend to. He has no milk permit from the City of Port Arthur and does not intend to get one. He is suing in this case for himself and other dairymen in like status. He intends to continue to sell Grade "A" raw milk to Carnation Company in Houston.

In the early part of the year 1948 Carnation Company filed an application with the Health Department of the City of Port Arthur for a permit to sell Grade "A" pasteurized milk in Port Arthur. On March 9, 1949, the City of Port Arthur issued to the Carnation Company a permit to sell Grade "A" pasteurized milk. It was while the application of the Carnation Company for such permit was pending that the City adopted the two ordinances above referred

to. At the time the permit was accepted by Carnation Company they contended that the above ordinances were unenforcible as to it and its milk producers, and in substance stated it would not undertake to abide by such ordinances. On the occasion of the issuance of this permit, Dr. Solis, City Health Officer of the City of Port Arthur, stated that he had been certain all along that the milk of Carnation Company was Grade "A" pasteurized milk but that it was just like being in the army, he was not able to issue the permit. There is very little, if any, conflicting evidence in the record as to the grade and quality of the milk processed and sold and distributed by Carnation Company. The findings of the trial court in this particular find ample support in the evidence coming from the health officials of the State of Texas and from the City of Houston. As a matter of fact, the appellants make no contention that the milk being sold by Carnation Company was not of the proper grade or standard, but relied on its asserted right to have its own inspectors inspect the various dairies supplying milk to the Carnation Company, and to receive the fees provided for in the two ordinances. It was shown that the Houston milk shed got an honor roll rating based upon the health department of the United States Public Health Service survey made in the latter part of 1948 and the early part of 1949. It was further shown that all the dairies from which Carnation Company receive milk meet all grades and requirements of the State of Texas promulgated by the State Health Officer, and also all of the requirements and provisions of the United States Public Health Service Milk Code for Grade "A" raw and Grade "A" pasteurized milk and meet all of the requirements of the Houston milk ordinances for Grade "A" raw and Grade "A" pasteurized milk; that the milk from these dairies and from Carnation Company's plant meet all requirements of any standard milk ordinance for Grade "A" raw and Grade "A" pasteurized milk and was true on March 9, 1949, and was true the date of the trial; that the Carnation Company's plant in Houston is probably one of the best milk plants in the South. It was also shown that

both the City of Houston and the City of Port Arthur have what is called a standard milk ordinance. Dr. Laurentz, City Health Officer of the City of Houston, testified at length as to the inspection of the various dairies in the Houston milk shed and of the plant of the Carnation Company; that his department operates under the supervision and regulations of the State Health Department and that the State Health Department makes spot checks of the Houston milk shed rather frequently; that the City of Houston has 14 inspectors to inspect the Houston milk shed and that they are regularly engaged in inspecting the milk plants and dairies in the Houston milk shed; that they inspect the milk plants and the receiving stations at least every month; that all of the dairies in the Houston milk shed are regularly inspected and that he has absolute confidence in his inspectors; that he certified to the Health Officer of the City of Port Arthur that Carnation Company's milk is Grade "A" pasteurized milk by letter dated April 27, 1948, and again by letter dated January 3, 1950; that he would immediately notify the City of Port Arthur if the milk selling at Port Arthur should drop below Grade "A" pasteurized milk, and if the dairies selling milk to Carnation Company in the Houston milk shed should drop below the standard for Grade "A" raw milk he would take permits away from such dairies; that there is some 1500 dairies in the Houston milk shed and that the City of Houston requires every dairy selling milk in the City of Houston, including that sold to Carnation Company, to have permits from the City. Mr. Lakey, Director of the Bureau of Food and Drugs of the State Health Department at Austin, Texas, testified in substance that the Houston Health Department is properly enforcing the Houston milk ordinance and the grade specifications and requirements promulgated by the State Health Department, and that his own inspectors had inspected the Houston milk shed about September, 1948, at which time the rating for raw milk sold to plants was 93.3 percent, rating of enforcement method 91.8 percent; that in making this survey his inspectors went through the dairies in the Houston milk shed and actually inspected

the dairies and receiving stations for milk plants and through the milk plants in Houston; that as the result of those ratings Carnation Company is recognized as a source of milk for interstate carriers.

We will not undertake to narrate any more of the evidence as to the quality and grade of the milk being sold and distributed by the Carnation Company, since, as stated before, there is no contention made that it does not comply with the grade specifications and requirements of the City of Port Arthur for Grade "A" pasteurized and Grade "A" raw milk.

Dr. Solis, City Health Officer of the City of Port Arthur, testified in part that he was not familiar with the provisions of the milk ordinance of the City of Houston and does not know whether the provisions of the Houston milk ordinance are equivalent to the provisions of the milk ordinance of the City of Port Arthur No. 1242, and he has never made an effort to determine whether or not the provisions of the Houston milk ordinance are equivalent to the provisions of the Port Arthur milk ordinance No. 1242, and he does not know whether the provisions of the Houston milk ordinance are equivalent to grade specifications and requirements promulgated by the State Health Officer and he does not know whether the provisions of the Houston milk ordinance are equivalent to the provisions of the United States Public Health Service Milk Code and that back in 1948 when he was considering the question of issuing a Grade "A" pasteurized milk permit to Carnation Company he did not make an effort to determine if the provisions of the Houston ordinance were equivalent to the provisions of the Port Arthur milk ordinance and did not make any effort to determine at that time whether or not the provisions of the Houston milk ordinance were equivalent to the grade specifications and requirements promulgated by the State Health Officer or equivalent to the provisions of the United States Public Health Service Milk Code, and at this time since receiving the application of Carnation Company for renewal of its milk permit for 1950 he has made no effort to satisfy himself as to whether or not the provisions of the Houston milk ordinance are equivalent to the Port Arthur milk ordinance or to the grade specifications and requirements promulgated by the State Health Officer or to the provisions of the United States Public Health Service Milk Code. He further testified that he does not know whether he is satisfied that the Health Officer of Houston is properly enforcing the provisions of the Houston milk ordinance and the provisions of the grade specifications and requirements promulgated by the State Health Officer and the provisions of the United States Public Health Service Milk Code; that he is making no effort to satisfy himself as to whether or not the Health Officer of Houston is properly enforcing those provisions and since issuing permit to Carnation Company on March 9, 1949, he has made no effort to determine whether the Health Officer of the City of Houston is properly enforcing the provisions of the Houston milk ordinance and the provisions of the United States Public Health Service Milk Code and the provisions of grade specifications and requirements promulgated by the State Health Officer; that he assumed that the State Health Officers are properly supervising the grading and labeling of milk in the State of Texas; that he intended to cancel Carnation Company's permit because they did not pay the permit fee called for under ordinances Nos. 1354 and 1355 of the City of Port Arthur, that was the reason he was going to cancel this permit when this injunction suit was brought and at this time he will not renew the Carnation Company permit because they will not pay the permit fee provided in ordinances Nos. 1354 and 1355. He further testified that he did not know whether or not the milk the Carnation Company is selling in Port Arthur at this time is Grade "A" pasteurized milk; that his inspectors have not inspected the Houston milk shed; that he cannot say whether he is satisfied or not that the Carnation Company's milk now being sold in Port Arthur is Grade "A" pasteurized milk because his own Port Arthur milk inspectors have not inspected the Houston milk shed; that this is the only reason he is not satisfied that it is Grade "A" pasteurized milk; that the inspection of the Houston

milk shed is not under his supervision; that he takes the position that unless the inspection is under his supervision that he will not issue a Grade "A" pasteurized permit to sell milk in Port Arthur; that if milk is produced from a dairy which does not have a permit from Port Arthur and that milk is sold to a milk plant in Houston which had a Grade "A" pasteurized permit and this dairy had a Grade "A" raw milk permit under the Houston Health ordinance that he will not issue to that milk plant a Grade "A" pasteurized milk permit because the Port Arthur milk inspectors do not inspect the dairies and the milk plants in Houston in the Houston milk shed; that pasteurization itself kills all pathogenic bacteria; that if milk has been mishandled and has not been properly pasteurized they can tell that in the Port Arthur laboratory by taking the bacteria count and making a differential count to determine the type of bacteria; that you can pick up a quart of milk in Port Arthur and run a test upon it and determine whether or not the milk came from cattle with tuberculosis. It thus appears that the City of Port Arthur is concerned mostly with the collection of the fees provided for in ordinances Nos. 1354 and 1355 as to these appellees, rather than the quality of milk that is being sold and distributed by them.

In 1937 the legislature of Texas passed a comprehensive milk grading and pasteurization statute, same being Article 165–3 of the Revised Civil Statutes of Texas of 1925, Vernon's Ann.Civ.St. art. 165–3. This statute goes into detail in defining, among other terms, milk and pasteurized milk and milk products. Section 2 of this statute authorizes the State Health Officer to define what shall constitute and to fix the specifications for the production of the various grades of raw milk and raw milk products, according to the safety and food value of the same and the sanitary conditions under which the same are produced and handled, together with the same authority as applying to pasteurized milk and pasteurized milk products, provided such specifications defined and fixed by the State Health Officer shall be based upon and in harmony with the specifications for these grades of pasteur-

ized milk and pasteurized milk products and raw milk and raw milk products as set forth in the current United States Public Health Service Milk Ordinance. It also provides that any city adopting specifications and regulations for any grade of milk shall be governed by the specifications and regulations promulgated by the State Health Officer as herein authorized. Section 6 of said Act authorizes the State Health Officer to supervise and regulate the grading and labeling of milk and milk products in conformity with the standard specifications and requirements promulgated for such grades and in conformity with the definitions of this Act, and he and his representatives shall have the power to revoke and regrade any permits issued by any health officer when upon examination he or his representative shall find that such permit for the use of any grade label does not conform to the specifications or requirements promulgated by him in conformity to this Act. Section 7 of such statute provides that the governing body of any city in the State of Texas may make mandatory the grading and labeling of milk and milk products sold or offered for sale under the United States standard milk ordinance within their respective jurisdiction * *. By adopting an ordinance to that effect and by providing the necessary facilities for determining the grades and for the enforcement of this Act, provided, however, the provisions of this Section shall apply only to milk or milk products sold or offered for sale by any person, partnership or corporation directly to the consumer of such milk or milk products. Section 8 provides for a penalty for the violation of any provision of the statute. On March 1, 1942, Dr. George W. Cox, State Health Officer of Texas, adopted and promulgated specifications and requirements for Texas as authorized in this statute. In said grade specifications and requirements promulgated by the State Health Officer the various grades of raw and pasteurized milk are provided for. Section 3 of said grade specifications and requirements provides: "It shall be unlawful for any person to bring into or receive into a city which has adopted these grade specifications or its police jurisdic-

tion for sale or to sell or offer for sale therein or to have in storage where milk or milk products are sold or served any milk or milk products defined in this promulgation who does not possess a permit from the Health Officer of the city. Only a person who complies with these requirements shall be entitled to receive and retain such a permit. Such a permit may be suspended by the Health Officer or revoked after an opportunity for hearing by the Health Officer upon the violation by the holder of any of these specifications or requirements. Sections 5 and 6 provide for the inspection of dairy farms and milk plants for the purpose of grading and regrading and the examination of milk and milk products. Section 11 reads as follows: "Section 11, Milk and Milk Products From Points Beyond the Limits of Routine Inspection. The sale of milk and milk products from points beyond the limits of routine inspection by a city may be prohibited, unless the Health Officer can satisfy himself that such milk is produced and/or pasteurized under provisions equivalent to those of these specifications and requirements." Section 15 provides that the above grade specifications and regulations shall be interpreted, applied and enforced in accordance with the interpretations contained and set forth in the 1939 Edition of the United States Public Health Service Milk Code. When these grade specifications and regulations have been adopted locally by a city ordinance they shall be interpreted, applied and enforced by the City Health Officer in accordance with the above * * *.

Article 165–3, aforesaid, and the grade specifications and requirements promulgated by the State Health Officer under the authority of said Article constitute the general law of Texas, and no ordinance can be legally enacted by the governing body of the city which conflicts or is inconsistent with said article and said grade specifications and requirements promulgated by the State Health Officer. Prescott v. City of Borger, Tex.Civ.App., 158 S.W. 2d 578; Leach v. Coleman, Tex.Civ.App., 188 S.W.2d 220. The grade specifications and requirements promulgated by the State Health Officer are based upon and are in harmony with the specifications for said grades of raw and pasteurized milk as set forth in the United States Public Health Service Milk Ordinance. Both the Houston milk ordinance and the Port Arthur milk ordinance, before its amendements by Articles 1354 and 1355, were based upon and in harmony with the grade specifications and requirements promulgated by the State Health Officer. It thus appears that it is unlawful for any person to bring into or receive into the City of Houston or Port Arthur for sale or to sell or offer for sale therein or to have in storage where milk or milk products are sold or served any milk or milk products defined in said grade specifications and requirements and who does not possess a permit from the Health Officer of said cities, and only a person who has complied with said grade specifications and requirements shall be entitled to receive and retain such a permit, which permit may be revoked upon the violation by the holder of any said grade specifications or requirements. Since only persons complying with the grade specifications and requirements are entitled to receive and retain a permit, it seems to us that all persons who do comply with said grade specifications and requirements are entitled to receive and retain such a permit. We do not think it was the intent of the legislature to authorize a City Health Officer of every city in Texas to require milk plants located in other cities to be inspected by its local health officer, and to demand such a fee for such services as would in this case be prohibitive and confiscatory. It was shown in this case that Carnation Company was making a gross profit on the sale of milk in Port Arthur of something about $20 per day, while under the ordinances complained of they were required to pay as a fee for its permit about $40 per day. This, in addition to the $10 permit fee required from each dairy selling milk to the Carnation Company plant. This, in effect, throws up a trade barrier and is in restraint of trade, and while the exact point involved in this case does not seem to have been passed on by the Texas courts, many cases involving the same principle here involved have been before the courts and in most cases, for one

reason or another, have been stricken down. See Ex parte Ernest, 138 Tex.Cr.R. 441, 136 S.W.2d 595, 598, where the Court of Criminal Appeals discussed the powers of County and City Health Officers in making inspections of bakeries located in different cities. Among other things, the court said: "We cannot believe that the Legislature, in enacting these provisions and providing for these officers, intended that their duties should overlap. That the legal authority of one county health officer or one city health officer should be so construed as to allow him jurisdiction over another county or city. Such seems manifest from the wording of the statutes and any other interpretation would tend to create confusion and lead to friction. To authorize or permit the City of Winters to extend its authority of inspection to within the limits of the City of Fort Worth would be an encroachment by the City of Winters upon like powers of the City of Fort Worth and make its powers subordinate and subservient to the powers of the City of Fort Worth * * *." Further on in the opinion, and in referring to the opinion of the Court of Civil appeals in Jones Fine Bread Co. v. City of Groesbeck, which was reversed by the Supreme Court of Texas in 136 Tex. 123, 148 S.W.2d 195, the Court had this to say: "It appears that the decision in that case is based upon the general broad powers of regulation in the confines of its territorial limits without giving consideration to the principle that the power and authority of one city ends where the other begins. There is no question in our minds as to the authority of the city to pass such an ordinance and enforce it as it applies to that particular city, but we do not think that it can be seriously contended that one city can legally authorize the city health officer to invade the province of a sister city, make inspection of its bakeries, dairies, etc. and require the bakeries to pay the city health officer the inspection fee specified in the present ordinance. It seems to us that such procedure is contrary to the spirit and object of our form of government and the statutes above referred to. There is no doubt of the legal authority of the City of Winters to inspect food pro-

ducts when they enter its borders and punish those for bringing contaminated bread into the city. However, the powers of city health officers and their qualifications are assumed to be equal. Their integrity in the absence of any showing to the contrary must be assumed to be above reproach. Consequently when the bakeries of the City of Fort Worth are inspected by the city health officer thereof and have issued to them a clear bill of health, what useful purpose could be served by an inspection of their bakery by the health officer of the City of Winters?" And further "The health officer of the City of Winters, or any other agency of said municipality, not having a legal right to inspect the bakeries located in Fort Worth would not legally be entitled to compensation for such services. To permit the health officer of the City of Winters to invade the City of Fort Worth and to inspect the bakeries located therein and require the bakeries to pay to the City Health Officer of Winters the sum of $2.40 per mile provided for in said ordinance as a prerequisite to the privilege of selling their products in said city, would be an assumption of authority in the exercise of extra-territorial powers not delegated to it by any Constitutional or Legislative grant." In an opinion by the Commission of Appeals adopted by the Supreme Court in Jones Fine Bread Company v. City of Groesbeck, after citing Ex parte Ernest, supra, the court says: "The ordinance enacted by the City of Groesbeck, like that of the City of Winters, is penal. Section 9 makes it unlawful for any person, firm or corporation, to sell within the limits of the city, bread prepared, manufactured and baked in a bakery, the owner or operator of which has not obtained a permit as required by the ordinance, and Section 11 provides that the violation of any provision of the ordinance shall constitute a misdemeanor and that any person convicted thereof shall be fined in a sum not exceeding $100, each day of such violation being made a separate offense. The Supreme Court will follow the decision of the Court of Criminal Appeals as to the validity of the ordinance." [136 Tex. 123, 148 S.W.2d 197.] It thus appears that ordinances Nos. 1354 and 1355, which undertake to extend

the criminal jurisdiction of the City of Port Arthur to acts committed within the City of Houston are null and void and of no effect, and for this reason alone the judgment should be affirmed. We are convinced that the foregoing authorities, together with holdings in the following cases, City of Abilene v. Tennessee Dairies, Tex.Civ.App., 225 S.W.2d 429; City of Arlington v. Lillard, 116 Tex. 446, 294 S.W. 829; City of Electra v. Carnation Company of Texas, Tex. Civ. App., 207 S.W.2d 192; City of Greenville v. Cabell's, Inc., Tex.Civ.App., 207 S.W.2d 898; Prescott v. City of Borger, Tex.Civ.App., 158 S.W.2d 578 and City of Dallas v. City Packing Co., Tex.Civ. App., 86 S.W.2d 60, support the conclusion reached by the trial court, and therefore, its judgment should be affirmed and it is so ordered, affirmed.