**CABELL'S, Incorporated, Appellant,**

**v.**

**CITY OF NACOGDOCHES, Appellee.**

No. 6009.

Court of Civil Appeals of Texas. Beaumont.

Feb. 9, 1956.

Rehearing Denied March 14, 1956.

Murph Wilson, Tyler, for appellant.

S. M. Adams, Jr., Nacogdoches, for appellee.

WALKER, Justice.

Plaintiff, the appellant, sued the defendant city, the appellee, to restrain defendant's interference with plaintiff's sale of Grade A milk and milk products, to have declared void an ordinance of the city which prohibited the sale of milk with less than a 4% content of milk fat, and to restrain the enforcement of said ordinance.

Plaintiff is a concern which engages in the business of selling milk for human consumption. This milk the plaintiff buys from farmers over a wide area and transports to a processing plant in Dallas which plaintiff owns, and there plaintiff brings the milk to a uniform milk fat content, pasteurizes it and treats it in various ways, bottles it, and then transports it to places where it is distributed for sale. Plaintiff's business is a large one and evidently is carried on in a number of towns besides the defendant city.

Plaintiff began to sell its milk and milk products in the defendant city in 1951 or 1952, and at that time this business was regulated by an ordinance of the defendant city dated June 7, 1938. This ordinance prescribed a comprehensive system of rules governing the inspection of dairy farms and milk plants and the distribution and sale of milk products, and so far as the evidence before us shows, it has remained in force at all relevant times except as it was amended by the ordinance in suit and by the latter's two predecessors.

The following provisions of the ordinance of June 7, 1938, are material: (Sec. 1) Part A of Section 1 defines "milk" in part as containing not less than 3¼% of milk fat. Part B defines "milk fat or butter fat" as the fat of milk. Part I defines "milk products" as meaning and including various substances. (Sec. 3) Section 3 provides for permits. It requires one engaged in plaintiff's business and one selling milk at retail to procure permits from the health officer of the defendant city before bringing or receiving milk or milk products into the defendant city for sale, or to sell the same, or to offer the same for sale therein, or to have the same in storage where milk or

milk products are sold or served. Further, it provides that "only a person who complies with the requirements of this ordinance shall be entitled to *receive* and *retain* such a permit." Further, it provides in part for the revocation of a permit as follows: "Such a permit may be revoked by the health officer upon the violation by the holder of any of the terms of this ordinance * * * Provided, that the holder of said permit shall, after complying with such a revocation, have the right of appeal to the City Commission." (Sec. 8) Section 8 provides, in substance, before and after its amendment of the ordinance in suit, that only Grade A pasteurized milk, certified milk, and Grade A raw milk should be sold or offered for sale, to retailer or to ultimate consumer, within the defendant city. (Sec. 16) Section 16 prescribes as a penalty for violation of "any provision" of the ordinance, the punishment prescribed by State law or, if none was, then a fine not less than $25 nor more than $200. The officials and agents of a corporation actively in charge of the corporation's business were made subject to these penalties, and it was provided further that each violation should be a separate offense and that each day on which the ordinance was violated should be considered a separate violation. (Sec. 18) Section 18 provided that if any part of the ordinance were declared invalid, the remainder should nevertheless stand.

We have mentioned the fact that the ordinance in suit had two predecessors. The first of these, dated July 6, 1954, amended the general ordinance of 1938 by changing the definition of "milk" (in part A of Sec. 1) so as to require not less than 4% of milk fat instead of the 3¼% of milk fat prescribed originally in the 1938 ordinance. The second predecessor, dated August 25, 1954, postponed the effective date of the first until December 1, 1954. Then came the ordinance in suit, dated November 2, 1954, which contains two sections. The first section, in effect, repealed the two predecessor ordinances and re-adopted the definition of "milk" in the 1938 ordinance, putting the minimum content of milk fat back to 3¼%. However, the second section accomplished the purpose of these predecessors by an amendment of Section 8 of the 1938 ordinance which added a sentence requiring that all milk offered for sale, held in possession with intent to sell, or sold in the defendant city should have a milk fat content of at least 4%.

· The requirement of a 4% milk fat content by the ordinance in suit has caused the plaintiff to suspend its sales of Grade A milk in the defendant city and to bring this suit. Plaintiff's president testified that its milk was processed at its Dallas plant so as to have a milk fat content of 3.6% or 3.7% and that plaintiff would lose money on the sale of milk in the defendant city which contained the minimum of 4% of milk fat required by the ordinance in suit. The reason was that the quantity of ordinary Grade A milk sold by plaintiff in the defendant city was small in comparison with plaintiff's total sales, and to change the milk fat content of milk to be sold in the defendant city from that of the other milk produced by plaintiff at its plant would require that it be dealt with separately in processing, transporting, and distribution, and would require specially printed containers.

In July, 1954, when the first of the amendatory ordinances was enacted, the plaintiff, according to its president, was selling in the defendant city about 150 gallons of this Grade A milk a day, from which the plaintiff earned a profit of about 10%. Plaintiff's loss from being deprived of the sale of such milk thus amounted to about $400.00 a month.

The plaintiff has not terminated all of its business in the defendant city. Plaintiff continues to sell a small quantity of a premium milk, which has a high milk fat content, and also to sell some milk products. Mr. Friezell, who described himself as the City Sanitarian of the defendant city, testified that a survey made in September, 1954, showed that plaintiff was then selling about 22 gallons of this premium milk. The quantity and value of the milk products which plaintiff sells was not proved, but it is apparent that the plaintiff values the part

of its business which it still conducts in the defendant city, and that this business is not trivial.

The plaintiff's president testified in substance that the plaintiff had the milk to sell and was in a position to sell it were plaintiff not barred by the ordinance in suit.

The plaintiff has a permit to conduct its business within the defendant city, and has evidently had this permit ever since it began to conduct its business in said city.

The only point of difference between the plaintiff and the defendant is the requirement of a minimum 4% milk fat content. Otherwise, the defendant city has no objection to plaintiff's milk, and the plaintiff's milk, in fact, complies with all requirements of law made by the State and by the defendant city except the 4% butterfat content required by the ordinance in suit.

The parties stipulated, among other things, that the officials of the defendant city have notified the plaintiff "that it will enforce the penalties provided in *said ordinance*" unless the plaintiff stops selling milk in the defendant city with less than 4% butterfat. Obviously, the penalties referred to will be enforced should the plaintiff *resume* the sale of its milk with less than 4% of butterfat, and these penalties necessarily must be those prescribed by the 1938 ordinance because the ordinance in suit and its two predecessors contain no penalties. Our statement of provisions from the 1938 ordinance shows two penalties, one criminal in nature, prescribed in Section 16, and another civil in nature, prescribed in Section 3. This civil penalty is a forfeiture of the plaintiff's permit to conduct its business in the defendant city.

## Opinion

The defendant city is a home rule city, acting under a charter adopted in 1929. There is authority in Section 29 of Article II of this charter for the regulation and inspection of the character and standard of plaintiff's milk and to license the plaintiff's business and also authority to provide for the enforcement of the defendant's ordinances by a fine. A court for the city is established in Article VII of the charter.

However, in 1937 the 45th Legislature enacted Article 165-3, Vernon's Ann.Civ.Tex. St., and Section 1, paragraph (A), of this statute defines milk as containing not less than 3¼% of milk fat. Plaintiff contends that this statute and the regulations adopted by the State Health Officer pursuant to this statute authorize the plaintiff to sell milk which contains not less, that is, *at least* 3–¼% of milk fat and that the 4% milk fat requirement of the ordinance in suit is in conflict with said statute and regulations and is therefore void for lack of power to enact.

We sustain this contention. The following provisions of Article 165-3 are especially significant for its interpretation. In Section 2 of Article 165-3 the State Health Officer is authorized "to define what shall constitute and to fix the specifications for" the production of raw milk and raw milk products of Grades A, B, C, and D, and to "define what shall constitute and to fix the specifications for" the production and handling of pasteurized milk and pasteurized milk products of Grades A, B and C. Further, it provides that "such specifications defined and fixed by the State Health Officer shall be based upon and in harmony with the specifications for these grades" of raw and pasteurized milk and milk products "as set forth in the current United States Public Health Service Milk Ordinance." Further, it provides that "the definitions, specifications and requirements promulgated by the State Health Officer" should become effective three months after promulgation, and the State Health Officer was directed to furnish city and county health officers with "printed copies of such grades, specifications, and requirements to County and City Health Officers, at least thirty days before their effective date." These provisions necessarily imply that cities shall not have power to enact ordinances conflicting with the State Health Officer's exercise of his powers but the next paragraph states this expressly in these words: "Any city adopting any specifications and regulations

for any grade of milk shall be governed by the specifications and regulations promulgated by the State Health Officer, as herein authorized." Of course, the "milk" referred to in these various provisions of Article 165-3 is that defined in Part (A) of Section 1 of said statute.

■ These provisions demonstrate an intention to provide for and require a statewide uniformity of standards and practices, and other provisions of Article 165-3 tend toward the same end. For instance, Section 6 of the statute authorizes the State Health Officer to "supervise and regulate the grading and labeling of milk and milk products in conformity with the standards, specifications and requirements which he promulgates for such grades, and in conformity with the *definitions* of this Act", and to revoke and regrade permits issued by "local health officials" if he find that "such permit for the use of any grade label does not conform to the specifications or requirements promulgated by him in conformity to this Act." And the emergency clause of the Act itself states: "The fact that there are no State standards for the use of milk labels indicating the safety, quality and food value of milk and milk products and the fact that such labels are being used to misrepresent those qualities to the detriment of the public health, creates an emergency", etc. Acts 1937, c. 172, § 9.

From time to time, as reported decisions show, the State Health Officer has exercised his authority to adopt and promulgate definitions, specifications and requirements, and the regulations applicable to matters now in suit were promulgated in 1953. Section 1 of these regulations provides that "the following definitions shall apply in the interpretation and enforcement of these regulations" and Part A immediately following defines milk, in part, as containing "not less than 3¼% milk fat", just as does the definition of "milk" in Section 1 of Article 165-3. The State Health Officer's definition is in accord with the definition of "milk" in Part A of Section 1 of the United States Public Health Service Milk Ordinance, to which, in Section 2 of Article

165-3, the State Health Officer is directed to conform. The State Health Officer's definition of "milk" permeates his entire system of regulations attaching often to his uses of the word "milk". Of particular significance are the specifications for the various grades of milk. And as we construe Section 11 of the regulations, this definition of "milk" is also a part thereof. Section 11 provides: "*Milk and milk products* from points beyond the limits of routine inspection of a city which has adopted a Milk Grading and Labelling Ordinance may not be sold in that city, or its police jurisdiction, unless produced and/or pasteurized under provisions which are substantially equivalent to the requirements of that Milk Grading and Labelling Ordinance, and which are enforced with equal effectiveness, as determined by a milk sanitation rating." The meaning of the words italicized should be determined by the State Health Officer's definitions.

■ Decisions construing Article 165-3 have consistently held that as regards matters provided for by this statute, requirements of city ordinances additional to those made by or under the statute were void for lack of power to enact. See Prescott v. City of Borger, Tex.Civ.App., 158 S.W.2d 578; Leach v. Coleman, Tex.Civ.App., 188 S.W.2d 220; City of Electra v. Carnation Co., Tex.Civ.App., 207 S.W.2d 192; City of El Paso v. Russell Glenn Distributing Co., Tex.Civ.App., 237 S.W.2d 818; City of Port Arthur v. Carnation Co., Tex.Civ.App., 238 S.W.2d 559; Falfurrias Creamery Co. v. City of Laredo, Tex.Civ.App., 276 S.W.2d 351. Of these the most significant to the question now under consideration, because emphasizing the uniformity of standard and practice intended by the statute, are the decisions denying a city the right to duplicate inspections made elsewhere. In the latest of these, Falfurrias Creamery Co. v. City of Laredo, the San Antonio Court said, 276 S.W.2d at page 353: "We think it reasonably clear that the purpose of the act, Article 165-3, was to provide for uniform grades and labeling of milk products throughout the State, and that it was contemplated that inspection services should be

rendered by the health officers of the various cities and towns of the State under the direction and supervision of the State Health Officer. * * * The inspection required is a State inspection, although carried out by local inspectors acting under municipal ordinances enacted in accordance with the State law." Further, 276 S.W.2d at page 355: "Before issuing a permit, the Laredo Health Officer undoubtedly was under a duty to reasonably satisfy himself that the Health Officer at Falfurrias was making inspections in accordance with the standard ordinance contemplated by the State law."

■ It is apparent that there can be no uniformity in grading milk if the various cities of the state can establish standards for milk fat content different from that adopted by the State Health Officer. Grade A, for instance, could have many different meanings, depending solely on where the purchaser happened to be. And it is apparent, too, that under the guise of fixing a standard a city could set up a barrier to trade. The usefulness and development of great milk plants such as the plaintiff now operates and such as that of the Carnation Company described in City of Port Arthur v. Carnation Co., supra, could be materially interfered with and perhaps made unprofitable. The 4% milk fat requirement of the ordinance in suit is, in terms, a prohibition of the sale of milk lawful elsewhere and so viewed is void as an interference with the sale of property analogous to that reviewed in Prescott v. City of Borger, supra. But this requirement may also be, and probably should be viewed as an indirect attempt on the part of the defendant city to enact a standard, and in that aspect it is likewise void because in conflict with the standard set by the State in the statute and regulation referred to above.

These comments bring us to the plaintiff's second contention and to the principal ground on which the defendant city relies to sustain the judgment of the trial court. As we have stated, Section 16 of the 1938 ordinance provides a criminal punishment for breach of the ordinance in suit, which, as we have stated, is only an amendment of parts of the 1938 ordinance, and the defendant prayed dismissal of the suit for lack of jurisdiction, on the ground that the plaintiff had an adequate remedy at law for the attempted enforcement of the ordinance by resisting criminal prosecution. The trial court, styling this plea one to the jurisdiction, sustained the plea by an order made at the conclusion of the trial, but later rendered a final judgment which simply denies the plaintiff an injunction. We assume, however, from the parties' briefs, that this judgment is based upon the earlier order and that relief by injunction was denied plaintiff on the ground that plaintiff had an adequate remedy at law in the criminal courts, and not for some other reason pertaining to the merits of the cause. It is this holding which plaintiff's second contention attacks. Plaintiff says that the void provision of the ordinance in suit causes plaintiff irreparable damage and will subject the plaintiff to a multiplicity of suits. The defendant city denies that plaintiff is caused irreparable damage, and argues that the ordinance in suit is a penal ordinance, that no vested property right of the plaintiff is affected by it, and that the trial court accordingly had no jurisdiction to enjoin enforcement of the ordinance because such relief would conflict with the potential jurisdiction of the criminal courts.

■■ The first question to be considered concerns the nature of the plaintiff's right to sell its Grade A milk in the defendant city which, we have stated above, the plaintiff has. The following considerations bear on this question. *First,* plaintiff actually has milk and wants to sell it within the defendant city. Units of this milk change and perish from day to day but the supply itself may be said to be constant. *Second,* this milk is property and the right to sell this milk and other milk acquired and prepared by the plaintiff for sale is one of the rights included within, or incidental to, the plaintiff's ownership of said milk. This right is subject to regulation by the State and by the defendant city for the protection of the public health, but only within limits set by constitution and such statutes as Article 165-3. Thus in Prescott v. City of Borger,

Tex.Civ.App., 158 S.W.2d 578, at page 581, the court said: "Milk and other dairy products are legitimate subjects of commerce and the right to sell them should not be abridged by legislative bodies further than reasonably to protect and safeguard the public health." And see City of Greenville v. Pratt, Tex.Civ.App., 214 S.W.2d 179, at page 182. The matter is stated more fully by the Supreme Court of Pennsylvania in Otto Milk Co. v. Rose, 375 Pa. 18, 99 A.2d 467. This suit was brought by a milk dealer to whom the city of Johnstown had denied a permit because his plant and sources of supply were beyond the limits of a certain area, and at 99 A.2d 469 the court said: "This case raises a grave constitutional question. It is self-evident that the right of property includes not only that of owning and possessing it, but also of selling and transferring it to others. No one would contend that any State or municipality would have the constitutional right to deny to a merchant the right to sell, within its jurisdiction, any ordinary items of personal property, wares or merchandise not requiring supervision under the police power. The only limitation to that right as far as milk or other articles of food are concerned is that regulations to insure the purity and wholesomeness of the product may be adopted as a condition to the granting of permission for its sale or distribution." And see Grant v. Leavell, 259 Ky. 267, 82 S.W. 2d 283, at page 285 and the other decisions cited in Otto Milk Co. v. Rose; and also see Whitney v. Watson, 85 N.H. 238, 157 A. 78. It was this right of property which the Supreme Court enforced in City of Austin v. Austin City Cemetery Ass'n, 87 Tex. 330, 28 S.W. 528. *Third:* the plaintiff, as we have stated, has complied with all requirements of law regulating its milk, including the provisions of Article 165–3 and of the State Health Officer's regulations, and such requirements as the defendant city makes other than the 4% milk fat requirement. Further, the plaintiff holds a permit to sell milk, as Article 165–3 and as the 1938 ordinance of the defendant city require. There is, then, no legal bar whatever to the sale of the plaintiff's milk in the defendant city and no valid condition uncom-

plied with on which the plaintiff's right of property to sell its milk in defendant city depends. We conclude, therefore, that the plaintiff's right to sell its milk in the defendant city is a vested one within the strict equitable meaning of that term as used in City of Austin v. Austin City Cemetery Ass'n. We see no distinction to be made between the right enforced in that case and the right of the plaintiff here based on differences between the kinds of property involved; the units of plaintiff's supply of milk are perishable in a sense in which the Cemetery Association's lots of land were not, but the supply itself, or stock, is renewed and as we have stated may properly be said to be constant.

The contention of the defendant city that plaintiff's permit is not a vested property right is correct in the sense that this permit may be forfeited for cause, but otherwise it may not be, as decisions cited elsewhere in this opinion show, because of the plaintiff's right of property, made unconditional by plaintiff's compliance with lawful requirements. Defendant city's argument does not take this basic right of plaintiff's into account, and the conditional nature of the permit is not material.

■ From these conclusions it follows that the potential jurisdiction of the criminal courts over prosecutions of plaintiff for violating the void provision of the ordinance in suit did not deprive the trial court of jurisdiction to grant plaintiff a civil remedy declaring said provision void and restraining enforcement thereof by the defendant city. The ordinance in suit merely creates situations within the potential jurisdiction of both civil and criminal courts. See, Gann v. Keith, 151 Tex. 626, 253 S.W.2d 413; City of Austin v. Austin City Cemetery Ass'n, supra. Then the next question to be considered—and it seems to us to be a question separate and distinct from that of jurisdiction—is whether, jurisdiction to award an injunction existing, there is a proper case for such relief under the general rules of equitable jurisprudence. See, City of Austin v. Austin City Cemetery Ass'n, supra; Pomeroy's Equitable

Jurisprudence, 5th Ed., Sec. 161. And whether there is such a case depends here on whether the plaintiff had an adequate remedy at law by which to protect and enforce its right to sell its Grade A milk in the defendant city in spite of the void requirement of 4% milk fat.

■ The only remedy at law of the plaintiff which the defendant city argues to be adequate is a wholly negative one, being only the power, on trial or by habeas corpus, to defeat a prosecution of the 4% milk fat requirement when, and if, the defendant city elects to institute one, and as is pointed out below the defendant city need not institute such a prosecution to enforce the requirement. This remedy of the plaintiff's in the criminal courts is not an adequate remedy to protect and enforce the plaintiff's right to sell milk in the defendant city for at least the following reasons.

In the first place, the requirement of 4% milk fat applies to retail dealers who might buy milk from plaintiff for resale, and these dealers would be as liable to criminal prosecution for this act as would the plaintiff for selling them the milk. It is also to be remembered that the city's most effective means of enforcing the 4% milk fat requirement is not the criminal prosecution for breach of ordinance, it is by forfeiture of permit to do business. Section 3 of the 1938 ordinance requires such a permit, not only of the plaintiff but also of retail dealers, at least (Sec. 5, Article 165–3) for sales not made in original containers, and it authorizes forfeiture of such permits for breach of the ordinance in suit. Section 3 of the State Health Officer's regulations also requires a permit from the city health officer for such persons and provides for suspension or forfeiture for violation of the regulations. Success by one of plaintiff's retail purchasers, or by the plaintiff itself, in resisting a prosecution for breach of ordinance would neither prevent forfeiture nor get back any permit forfeited; and it is not likely that responsible officials of the defendant city would think it proper to accept the loss of such a prosecution in an inferior court, which they could not appeal, as a final determination of their powers to regulate a business so important to the public health as the sale of milk within the city. Nor is it at all likely that a retail dealer, simply to make some sales of plaintiff's milk, would risk the temporary loss of his permit or the temporary loss of a criminal prosecution against him, since the necessary consequence of such loss would be the further loss of public confidence and esteem, directly affecting his business. So, as regards retail dealers in milk to whom the plaintiff might wish to sell its products, the ordinance in suit operates to the plaintiff's prospective damage as did the ordinance reviewed in City of Austin v. Austin City Cemetery Ass'n, supra, but with greater force against these purchasers of plaintiff than did the ordinance there against the Association's purchasers. This right of the plaintiff to sell at wholesale is at least a potential one of value, but the evidence does not show clearly whether the plaintiff or any other dealer had yet exercised such a right. The evidence shows that the plaintiff, and other concerns like plaintiff, do sell milk within the defendant city, and the quantities of such milk sold by plaintiff and the other dealers at the time of the September survey are in proof, as is the quantity of Grade A milk plaintiff was selling before the 4% milk fat requirement was enacted. Dealers such as the plaintiff and the other concerns referred to ordinarily do sell part of their milk to merchants for resale, and since the amount of Grade A milk the plaintiff was selling was substantial, 150 gallons per day, it seems probable that some of this was sold at wholesale.

But the case of the retail dealer is not the only source of loss, actual or potential, to the plaintiff. For if plaintiff's permit is forfeited, the result will be the end of the plaintiff's business in the defendant city until the plaintiff can compel a reinstatement of the permit. Sections 3 and 4 of Article 165–3 and Section 3 of the State Health Officer's regulations, as well as Section 3 of the 1938 ordinance of the defendant city, require the plaintiff to have a permit from the city health officer to sell its

milk within the defendant city, and it is held that injunctive relief, pending a determination of the parties' rights, may be awarded the city against a milk dealer who is selling milk within the city without a permit. See, Metzger Dairy of San Antonio v. City of Laredo, Tex.Civ.App., 268 S.W.2d 680. Furthermore, the public is not likely to buy the milk of a producer and dealer whose permit has been forfeited, and as we have pointed out, the successful resistance of criminal prosecutions will not restore the permit. The damage which the plaintiff will sustain from the termination of its business consists not only of the loss of profit from sale of its Grade A milk; it also includes the loss of profit from that part of the plaintiff's business to which the defendant city has no objection, namely, sale of premium milk and of milk products. That is, plaintiff would suffer an item of loss pertaining to a part of its business which the defendant city considers to be lawful, and this item would not be trivial. And this latter item of damage, as well as the first, is irreparable to the plaintiff for the reason that if the city health officer acts for the city, as its agent, in forfeiting the permit (and he is either agent for the city or the state), then it is the defendant city which has done this, and it is held that the city acts in a governmental capacity in granting or refusing a permit such as the plaintiff's and so is not liable in damages to the plaintiff for the loss caused by the forfeiture of the permit. See: McQuillin on Municipal Corporations, 3rd Ed., Sec. 26.01; 9 Tex.Jur. 511, Sec. 82.

For the reasons stated, and without considering the plaintiff's contention that the void provision would subject plaintiff to a multiplicity of suits, we hold that the plaintiff's remedy at law is inadequate and that the facts of the case are such as entitled the plaintiff to the injunction prayed for. See, City of Austin v. Austin City Cemetery Ass'n. We have made these extended comments because of a dictum in this decision concerning the adequacy of the Association's remedy in the criminal courts had no penalty been imposed on its purchasers. But independently there is authority for

such a judgment. Thus ordinances regulating the sale of milk were held void in part because conflicting with Article 165-3, and enforcement thereof was enjoined although those ordinances made violations thereof subject to criminal penalties. See, Prescott v. City of Borger, Tex.Civ.App., 158 S.W.2d 578; City of Port Arthur v. Carnation Co., Tex.Civ.App., 238 S.W.2d 559, this decision being by this court. It was held in City of Electra v. Carnation Co., Tex.Civ.App., 207 S.W.2d 192, at page 195, that a dealer like the plaintiff had such a property right as enabled it to maintain suit for an injunction.

In Sam's Loan Office, Inc., v. City of Beaumont, infra, the plaintiff Sam's was not remitted to the criminal courts for remedy but was held entitled to injunction restraining the enforcement of the void ordinance, in this court because of interference with a right of property, and in the Commission of Appeals because of interference with its business. The city had enacted an ordinance which required one to procure a license from the city to sell at auction in the city certain kinds of personal property, whether the property belonged to said person or to another, and requiring such a person to perform various other acts respecting such auction sales. The ordinance established criminal penalties for breach thereof. Sam's brought the suit against the city to restrain the enforcement of this ordinance, alleging that it had a stock of goods which it wanted to sell at auction but that the city was threatening to enforce the criminal penalties declared in the ordinance. In City of Beaumont v. Sam's Loan Office, Inc., Tex.Civ.App., 4 S.W.2d 586, at page 587, the appeal was from an order refusing to dissolve a temporary injunction granted Sam's and this court held: "Counsel for the city contends that a court of equity should not and will not grant a writ of injunction to prohibit the enforcement of a criminal city ordinance where no property rights of the applicant for the writ are involved, and where no multiplicity of suits is to be enjoined, even if the ordinance complained of be void. As an abstract proposition this is correct; but the proposition can have no application here, for the reason

that appellee's petition for the writ in this case shows clearly that its property rights are involved, and that the use of its property will be seriously impaired in the event the ordinance should be enforced, and that is sufficient to afford appellee equitable relief against an invalid or void ordinance, under an unbroken line of decisions in this state." The property right referred to in this quotation is the same as the one involved here. After trial of the merits the trial court adjudged the entire ordinance void and restrained its enforcement. On appeal, this court, in City of Beaumont v. Sam's Loan Office, Inc., Tex.Civ.App., 31 S.W.2d 882, held the ordinance valid and reversed the trial court's judgment, but in Sam's Loan Office, Inc., v. City of Beaumont, Tex.Com.App., 49 S.W.2d 1089, the Commission held the entire ordinance void because it was, in effect, prohibitory instead of regulatory, and they reinstated the trial court's judgment. In so doing, the Commission did not refer to criminal penalty or to Sam's ownership of property, but in terms based their judgment on the fact that Sam's right to sell goods at auction was a valuable one and was authorized and licensed by state statute. This decision is at least applicable to the facts plead by Sam's and so is applicable here, where the plaintiff, too, has property it wants to sell.

Under the following decisions, the plaintiff could maintain a suit to compel the defendant city to reinstate its permit if the defendant city forfeited said permit for breach of the void 4% milk fat requirement. See City of Greenville v. Cabell's, Inc., Tex. Civ.App., 207 S.W.2d 898; City of El Paso v. Russell Glenn Distributing Co., Tex.Civ. App., 237 S.W.2d 818; City of Electra v. Carnation Co., Tex.Civ.App., 207 S.W.2d 192; City of Port Arthur v. Carnation Co., Tex.Civ.App., 238 S.W.2d 559; Falfurrias Creamery Co. v. City of Laredo, Tex.Civ. App., 276 S.W.2d 351. See, also, Doeppenschmidt v. City of New Braunfels, Tex.Civ. App., 289 S.W. 425. We have said several times that the plaintiff has no remedy in the criminal courts to procure this reinstatement, but neither does success in a criminal prosecution prevent a forfeiture of per-

mit, and it does seem a strange rule of law which would deny the plaintiff a civil remedy to prevent the very forfeiture which, after it occurs, he is granted a civil remedy to revoke.

In cases where one had acquired a right by compliance with a state statute, that is, by payment of a fee, to use his property, a taxicab, in the exercise of a business or calling, namely, the operating of the vehicle for hire as a carrier within the city, upon procuring a permit from the city, the Supreme Court has held several times that the city could not make the permit depend upon a condition, namely, the payment of a fee, which was unlawful because this fee was for the exercise of the same right already acquired and held under the statute. In effect, the condition on which the permit depended was in conflict with the statute. In these cases the court has either affirmed injunctions restraining enforcement of the invalid provision of the ordinances involved or has held that the complainant was entitled to such an injunction, and in at least two of these cases the ordinances involved made breach of the invalid provision subject to criminal penalty. See City of Corpus Christi v. Texas Driverless Co., 144 Tex. 288, 190 S.W.2d 484; Payne v. Massey, 145 Tex. 237, 196 S.W.2d 493; Crow v. City of Corpus Christi, 146 Tex. 558, 209 S.W.2d 922. Those cases are analogous to this. The last two involved applications for declaratory judgments, but in Payne v. Massey, the court, 145 Tex. 237, 196 S.W.2d at page 496, cites four decisions by courts of civil appeals, to which writs of error were refused, awarding or affirming an award of injunctive relief against the enforcement of provisions of ordinances like that considered in Payne v. Massey, and we note that in each of these cases the ordinance involved established criminal penalties for breach of said provision. See A B C Storage & Moving Co. v. City of Houston, Tex. Civ.App., 269 S.W. 882; Ball v. City of McKinney, Tex.Civ.App., 286 S.W. 341; City of Waco v. Grimes, Tex.Civ.App., 288 S.W. 1113; City of El Paso v. Look, Tex.Civ App., 288 S.W. 506.

■ We note that Section 3 of the 1938 ordinance grants a right of appeal to the city council from the health officer's forfeiture of a permit, but this right avails the plaintiff nothing since the parties stipulated that "the officials" of the defendant city have informed the plaintiff that "it", that is, the city, will enforce the penalties applicable. See, City of Electra v. Carnation Co., Tex.Civ.App., 207 S.W.2d 192, at page 198.

The defendant city cites City of Austin v. Austin City Cemetery Ass'n but in a connection which we think not material. The dictum at 87 Tex. 337, 28 S.W. 530, to the effect that the Association's power to defeat a criminal prosecution for violating the ordinance would seem adequate had the ordinance not imposed a criminal penalty on the Association's purchasers is not applicable to the facts of this case. The ordinance under review here does impose a criminal penalty on a class of plaintiff's purchasers, actual or potential, and the Association's right to continue in business was not subject to requirement of permit as is the plaintiff's here, with the resulting items of loss we have discussed above. The defendant city also cites Stecher v. City of Houston, Tex.Civ.App., 272 S.W.2d 925, and Malone v. City of Houston, Tex.Civ. App., 278 S.W.2d 204, by the Galveston Court of Civil Appeals, and State ex rel. Flowers v. Woodruff, 150 Tex.Cr.R. 255, 200 S.W.2d 178, by the Court of Criminal Appeals. But these decisions may be distinguished. In both of the decisions of the Galveston Court, the relief available in the criminal courts to the complainants was adequate to them in a sense in which it is not adequate to the plaintiff here, and this would support the denial of an injunction even if the trial court had jurisdiction to issue one. The situation involved in the Flowers case is not like that here. The Court of Criminal Appeals state in their opinion that a vested property right must be involved to support the civil remedy of injunction against enforcement of an ordinance with criminal penalties, as do, of course, the civil courts, but the Court of Criminal Appeals do not say what they consider a vested property right to be, and their comments on City of Corpus Christi v. Texas Driverless Co. and on Payne v. Massey, at 150 TexCr.R. 255, 200 S.W.2d 182 and 183, indicate that they would construe the term more narrowly than has the Supreme Court. It seems to us that the right protected and enforced in the two latter decisions was a vested property right, and it plainly appears from the refusal of writs to the decisions of courts of civil appeals cited in this opinion from Payne v. Massey that the judgment in Payne v. Massey was not considered to be an innovation. City of Graham v. Seal, Tex.Civ.App., 235 S.W. 668, cited both by the Galveston Court and by the Court of Criminal Appeals, will have to be applied consistently with these other decisions. However, it is unnecessary to pursue this matter further.

The judgment of the trial court must be reversed. The facts are settled and we may, therefore, render a final judgment. We accordingly reverse the judgment of the trial court and render judgment that the 4% milk fat requirement of the ordinance in suit is void and that plaintiff have an injunction against the defendant city, restraining said city and its officers from enforcing said provision against the plaintiff. All costs will be adjudged against the defendant city.